UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JUDY CODDING, | Case No. 18-cv-00817-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| PEARSON EDUCATION, INC., | Re: ECF No. 17 |
| Defendant. | |

**INTRODUCTION**

This is a breach-of-contract case. Plaintiff Judy Codding, an education professional, entered into an employment agreement (later amended by two other agreements) (collectively, the "Agreements") with Pearson plc, an education and information company that provides curriculum assessment and other services to schools, school districts, states, and students. The Agreements provided, among other things, that Pearson plc would pay Dr. Codding certain monetary bonuses in the event that sales of its "Pearson System of Courses" ("PSoC") course offerings, which Dr. Codding helped to develop, exceeded a certain threshold dollar amount by the end of 2019. As of today, sales of PSoC course offerings have not exceeded that threshold amount.

Dr. Codding brings this action against Pearson plc's subsidiary Pearson Education, Inc., asserting three claims. First, she brings a breach-of-contract claim, alleging that Pearson Education failed to adequately promote and sell PSoC and thereby breached the implied covenant of good

ORDER – No. 18-cv-00817-LB

faith and fair dealing that attaches to the Agreements. Second, Dr. Codding alleges that Pearson Education anticipatorily breached the Agreements. Third, Dr. Codding asks for a declaratory judgment: Pearson plc and Pearson Education are in the process of selling one of their divisions, their U.S. Learning Services ("USLS") division, in which PSoC is "housed," and Dr. Codding asks that the court declare that a sale of USLS obliges Pearson Education to pay her bonuses. Pearson Education moves to dismiss the complaint.

Dr. Codding has not alleged sufficient facts to plead her breach-of-contract claim, and her anticipatory-breach and declaratory-judgment claims suffer from several factual and legal deficiencies. The court therefore dismisses Dr. Codding's complaint, with leave to amend.

## STATEMENT[1]

### 1. The Parties

Dr. Codding is an education professional who, among other things, was the award-winning principal of Pasadena High School in Los Angeles County, was a charter principal of the Coalition of Essential Schools (a national high-school reform effort), was an education consultant to the Ministry of Education in the People's Republic of China and the U.S. Department of Defense Schools, and was a commissioner on the California Commission for the Establishment of Academic Content and Performance Standards.[2]

Dr. Codding served as Chief Operating Officer and Vice President of the National Center on Education and the Economy ("NCEE"), a nonprofit policy and school reform company.[3] In 1998, in her capacity as COO and Vice President of NCEE, Dr. Codding co-founded America's Choice, Inc. as a nonprofit subsidiary of NCEE (that later became a for-profit entity) and served as its Chief Executive Officer and President.[4] NCEE launched America's Choice to implement a school-

---

[1] Unless otherwise noted, the fact allegations in the Statement are from the Complaint.

[2] Compl. – ECF No. 20 at 3–4 (¶¶ 9–10).

[3] *Id.* at 3 (¶ 6).

[4] *Id.* (¶ 7).

ORDER – No. 18-cv-00817-LB         2

improvement model that features standards-based instructional materials, coaching and professional development for teachers, and catch-up programs for struggling students.[5] America's Choice worked with 2,000 schools in 38 states, including California.[6] America's Choice personnel were involved in writing the new Common Core State Standards in English language arts ("ELA") and math that have been adopted by 42 states, including California, and the District of Columbia, Puerto Rico, and other U.S. territories.[7]

Pearson Education is a wholly owned subsidiary of Pearson plc, a British education and publishing company that provides curriculum assessment and other services to schools, school districts, and states, as well as directly to students.[8]

In 2010, Pearson plc acquired America's Choice for $80 million.[9] In December 2010, following Pearson plc's acquisition of America's Choice, Pearson plc and Dr. Codding entered into a letter employment agreement ("Employment Agreement"), whereby Pearson plc hired Dr. Codding as its Managing Director for the Common Core System of Courses.[10] In December 2012, the parties slightly amended the Employment Agreement by a written exchange of emails ("Email Amendment").[11]

On July 15, 2016, Pearson Education and Dr. Codding entered into a letter agreement and release ("Release Agreement").[12] Among other things, the Release Agreement memorialized the termination of Dr. Codding's employment, "contemplated the survival of certain terms under the Employment Agreement, and [] amend[ed] certain terms of the Employment Agreement."[13]

---

[5] *Id.* (¶ 8).
[6] *Id.*
[7] *Id.*
[8] *Id.* at 4 (¶ 11).
[9] *Id.* at 4–5 (¶ 12).
[10] *Id.* at 5 (¶ 13); Employment Agreement – ECF No. 20 at 21–23.
[11] Compl. – ECF No. 20 at 6 (¶ 14); Email Amendment – ECF No. 20 at 24.
[12] Compl. – ECF No. 20 at 6 (¶ 20); Release Agreement – ECF No. 20 at 26–36.
[13] Compl. – ECF No. 20 at 6 (¶ 21); Release Agreement ¶ 1 – ECF No. 20 at 26 (¶ 1).

## 2. The Agreements

The Employment Agreement assigned Dr. Codding responsibility for overseeing two separate programs.[14] First, the Employment Agreement tasked Dr. Codding with "applying [her] knowledge and support in integrating and helping [Pearson plc] learn to operate [America's Choice], and [her] helping to sign up several customers, such as LA Unified School District and others."[15] The second program was described in the Employment Agreement as follows: "For comprehensive K-10/12 mathematics and literacy courses designed to apply the philosophy of the Common Core State Standards: These courses will cover approximately 150 days of instruction, use multi-media delivery platforms, and have the distinction of being a system of learning through the grades, of engaging students and of being easy for teachers to use."[16] For her services, Dr. Codding was paid a salary and given specified employment benefits.[17]

Under the Employment Agreement, Dr. Codding was entitled to bonus amounts based on Pearson plc's sales of certain specified products "for which Dr. Codding was responsible as Managing Director, referred to as the 'Pearson System of Courses' or 'PSoC.'"[18] Paragraphs 2(b) and 2(c) of the Employment Agreement (as amended) set out Dr. Codding's bonuses.[19] Dr. Codding acknowledges that Pearson plc paid her the bonuses set out in paragraphs 2(b) and 2(c)(i), and hence this action relates solely to the bonuses set out in paragraphs 2(c)(ii) and 2(c)(iii).[20]

---

[14] Compl. – ECF No. 20 at 6 (¶ 15).
[15] *Id.* (¶ 16).
[16] *Id.* (¶ 17).
[17] *Id.* (¶ 18).
[18] *Id.* (¶ 19).
[19] Employment Agreement ¶ 2(b), 2(c) – ECF No. 20 at 22; *see also* Email Amendment – ECF No. 20 at 24 (amending paragraph 2(c)(ii)); Release Agreement ¶ 2 – ECF No. 20 at 27–29 (amending paragraph 2(c)).
[20] Compl. – ECF No. 20 at 7 (¶ 24).

Paragraph 2(c)(ii) (as amended) provides that once PSoC sales exceed a certain threshold amount ("Threshold Amount"), Pearson plc would pay Dr. Codding a set bonus amount.[21] Paragraph 2(c)(iii) (as amended) provides that Pearson plc would pay Dr. Codding a percentage royalty for all PSoC sales over the Threshold Amount, up to a specified ceiling.[22] The Agreements provide that the time period for calculating the performance of the courses for the purpose of calculating Dr. Codding's bonuses extended through the 2019 calendar year.[23]

The Agreements provide examples of relevant PSoC "sales" for calculating Dr. Codding's bonus.[24] Among other things, "sales" include "[a]ll dollar amounts returned by Pearson, through December 31[,] 2015, as refunds to customers who had purchased courses," "[t]he dollar amount of sales of the courses that were invoiced to Pearson to customers before December 31, 2015, but which have not been collected by Pearson," "the dollar amount of sales shipped to [certain specified] customers through December 31, 2015 that were not invoiced by Pearson," "[t]he dollar amount of sales of Professional Development services that are delivered in connection to the courses" provided that "such Professional Development services [are] delivered in person," and "the value of PSoC material that is sold in component parts, either alone or in combination with other Pearson products or services" provided that "the PSoC material makes up at least [a set percentage] of the total Pearson products and services with which the PSoC material is sold."[25] The parties acknowledged that "sales credit will not be given for samples, examination copies and versions, 'free with order' shipments, or other shipments or provisions of products for which Pearson does not request or seek payment from the customer."[26]

---

[21] *Id.*; Employment Agreement ¶ 2(c)(ii) – ECF No. 20 at 22; Email Amendment – ECF No. 20 at 24.

[22] Compl. – ECF No. 20 at 7 (¶ 24); Employment Agreement ¶ 2(c)(iii) – ECF No. 20 at 23.

[23] Compl. – ECF No. 20 at 9 (¶ 25); Release Agreement ¶ 2(c) – ECF No. 20 at 29.

[24] Compl. – ECF No. 20 at 7–9 (¶ 25); Release Agreement ¶ 2(c) – ECF No. 20 at 27–28.

[25] Compl. – ECF No. 20 at 8–9 (¶ 25); Release Agreement ¶ 2(c) – ECF No. 20 at 27–28.

[26] Compl. – ECF No. 20 at 8 (¶ 25); Release Agreement ¶ 2(c)(iii) – ECF No. 20 at 28.

Dr. Codding and Pearson Education entered into the Release Agreement on July 15, 2016.[27] The Release Agreement provides that Dr. Codding waived and released all obligations of Pearson plc, Pearson Education, and their affiliates with regard to "any matter or event whatsoever that has occurred or happened up to the date of this Agreement and Release, including but not limited to matters regarding [her] employment with [Pearson Education and its affiliates] and its termination," other than Dr. Codding's right to receive bonuses (and several other exceptions not relevant here).[28]

### 3. Pearson plc's and Pearson Education's Efforts to Sell the Pearson System of Courses

Dr. Codding alleges that Pearson plc and Pearson Education failed to use their best efforts to make PSoC sales.[29] The states of California and New Mexico adopted the PSoC ELA and math curricula, which were on both states' approved lists.[30] Pearson plc and Pearson Education subsequently did virtually nothing to sell PSoC in California or New Mexico.[31] Pearson plc and Pearson Education also did not do anything to have the PSoC ELA and math curricula adopted in other states, and as a result, it is highly unlikely that a school or school district in those states will buy PSoC course offerings.[32] Pearson plc and Pearson Education rarely, if ever, presented or showcased PSoC at national-education-association conferences.[33] Pearson plc never invited or asked Dr. Codding or her team to attend any of the conferences.[34] Pearson Education did not include PSoC within its core products that would be sold throughout the United States.[35] (Dr.

---

[27] Compl. – ECF No. 6 (¶ 20).
[28] Release Agreement ¶ 7 – ECF No. 20 at 30–31.
[29] Compl. – ECF No. 20 at 12 (¶ 33).
[30] *Id.* at 13 (¶ 35).
[31] *Id.* (¶ 36).
[32] *Id.* (¶¶ 37–38).
[33] *Id.* at 20 (¶ 59).
[34] *Id.* (¶ 57).
[35] *Id.* (¶¶ 62–63).

1 Codding does not specify whether these allegations refer to conduct that occurred before or after
2 July 15, 2016.)

3 Dr. Codding additionally alleges that Pearson plc and Pearson Education have incentivized their sales force to sell other Pearson products and disincentivized their sales force from selling PSoC.[36] According to Dr. Codding, through 2017, PSoC was never counted toward a Pearson Education salesperson's sales quota.[37] A salesperson could sell PSoC outside of his or her quota, but he or she would receive a 4% commission instead of the larger commission awarded for other Pearson products, thereby creating a disincentive for the sales force to sell PSoC products.[38]

Finally, Dr. Codding alleges that Pearson plc and Pearson Education are in the process of selling their U.S. Learning Services division.[39] The USLS division is a sales division, which Pearson Education has touted for its "ability to sell products across different subjects, adoption cycles, and regions."[40] PSoC is "housed" in the USLS division.[41]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

---

[36] *Id.* at 14 (¶ 45).
[37] *Id.* (¶ 47).
[38] *Id.*
[39] *Id.* at 18 (¶ 76).
[40] *Id.* at 15 (¶ 61).
[41] *Id.* at 18 (¶ 76).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. Breach of Contract

Dr. Codding does not allege that Pearson Education breached an express term of the Agreements. Instead, she alleges that Pearson Education breached the implied covenant of good faith and fair dealing.[42]

The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995)). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required her to do

---

[42] Compl. – ECF No. 20 at 11–12 (¶¶ 29–32), 17 (¶ 73).

or that she was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *Qingdao Tang-Buy Int'l Import & Export Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-cv-00624-LB, 2016 WL 6524396, at *5 (N.D. Cal. Nov. 3, 2016) (citing Judicial Council of California Civil Jury Instructions § 325 (2011); *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007)). Regarding the last element — that the defendant's conduct harmed the plaintiff — "'[c]ausation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain.'" *Siqueiros v. Fed. Nat'l Mortg. Ass'n*, No. EDCV 13-01789-VAP (DTBx), 2014 WL 3015734, at *5 (C.D. Cal. June 27, 2014) (quoting *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997)). "'The test for causation in a breach of contract action is whether the breach was a substantial factor in causing the damages.'" *Id.* (internal ellipsis omitted) (quoting *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 909 (2005)). "'[M]ere conclusory statements do not suffice' to sufficiently state a breach of contract cause of action." *Ketab Corp. v. Mesriani & Assocs., P.C.*, __ F. App'x __, No. 15-56753, 2018 WL 2041424, at *5 (9th Cir. May 2, 2018) (internal ellipsis omitted) (quoting *Iqbal*, 556 U.S. at 678); *accord, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012).

There are two preliminary issues. First, it is not clear whether the first element of a breach-of-contract claim has been met, namely, that the plaintiff and the defendant entered into a contract. Dr. Codding's complaint names only Pearson Education, not Pearson plc, as a defendant. But Dr. Codding's Employment Agreement appears to have been only with Pearson plc, not Pearson Education.[43] Because neither side raises this issue or distinguishes between the two entities in their

---

[43] Employment Agreement – ECF No. 20 at 23; *see* Compl. – ECF No. 20 at 4 (¶ 11) (allegations against "Pearson" refer to Pearson plc). The Release Agreement, which amended the Employment Agreement, was signed by Pearson Education (and, among other things, released "Pearson Education, Inc. and its affiliates, including but not limited to Pearson, Inc., Pearson plc, Pearson Education Holdings, Inc. Pearson Education and Assessment, Inc., The Pearson Charitable Foundation, NCS Pearson, Inc., and all of their respective officers, directors, employees, bonus and/or compensation plans"). Release Agreement – ECF No. 20 at 26, 30 (¶ 7), 35. But the original Employment Agreement
*(cont'd)*

briefs, the court assumes for the purposes of this motion (without deciding) that the Employment Agreement is binding and enforceable against Pearson Education.

Second, the parties raise a dispute about the scope of the implied covenant of good faith and fair dealing that should be read onto the Employment Agreement. Dr. Codding argues that under the implied covenant, Pearson Education had an obligation to use "best efforts" to make enough PSoC sales that Dr. Codding would receive her bonuses.[44] Pearson Education disagrees, arguing that it is required to use "reasonable efforts," not "best efforts," to "bring profits and revenues into existence."[45] The court need not address this issue here, because under either standard, Dr. Codding's complaint lacks sufficient factual allegations to plausibly plead that Pearson Education committed an actionable breach of the implied covenant and that this breach caused injury to Dr. Codding.

Dr. Codding cannot base her breach-of-contract claim on conduct that occurred on or before July 15, 2016, as she released claims for conduct before that date in the Release Agreement. *Cf. Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006) (plaintiff cannot bring a claim for released conduct).[46] And Dr. Codding's allegations of post-July 15, 2016 conduct do not plead causation. Dr. Codding alleges that "[h]ad Pearson [plc] and Pearson Education devoted any meaningful sales efforts to selling the PSoC ELA and math curriculum, it would have readily met the sales levels that would have entitled Dr. Codding to her . . . bonus under the Employment Agreement and Agreement and Release."[47] But this is just a conclusion, which is insufficient to state a breach-

---

was signed by Pearson plc. Employment Agreement – ECF No. 20 at 23. The Release Agreement recites that the parties to the original Employment Agreement were Dr. Codding and "Pearson" (without elaboration about whether "Pearson" refers to Pearson plc, Pearson Education, or both). Release Agreement – ECF No. 20 at 26.

[44] Compl. – ECF No. 20 at 12 (¶ 32); Codding Opp'n – ECF No. 19 at 6.

[45] Pearson Educ. Mot. – ECF No. 20-3 at 16.

[46] Dr. Codding does not dispute that she cannot base a breach-of-contract claim on conduct that occurred on or before July 15, 2016. *See* Codding Opp'n – ECF No. 19 at 6 ("[Complaint's] allegations make it clear that Dr. Codding is seeking to recover against Pearson for post-July 15, 2016 conduct and omissions continuing to the present."). Dr. Codding's complaint in many places does not make clear whether alleged conduct took place before or after July 15, 2016.

[47] Compl. – ECF No. 20 at 13 (¶ 44).

of-contract claim. Dr. Codding's factual allegations do not support the conclusion she draws. For example, Dr. Codding alleges that Pearson Education has done virtually nothing to sell PSoC courses in California or New Mexico (the two states that have PSoC on their approved list) and has done nothing to have the PSoC courses adopted by any other state. But she does not allege facts pleading that had Pearson Education exerted reasonable or best efforts, other states would have approved PSoC, and that Pearson Education would have made enough PSoC sales to meet the Threshold Amount necessary for Dr. Codding to receive any bonuses. Similarly, Dr. Codding alleges that Pearson Education has disincentivized its sales force to sell PSoC and incentivized them to sell other Pearson products. But she does not allege facts that plead that had Pearson Education not disincentivized its sales force, it would have sold enough PSoC to meet the Threshold Amount necessary for Dr. Codding to receive any bonuses. It might be one thing if the Agreements provided for a straight commission: in that case, any diminution in PSoC sales might cause a loss of potential royalties to Dr. Codding. But the Agreements do not provide for a straight commission: they set a Threshold Amount to receive bonuses, and if sales do not meet the Threshold Amount, Dr. Codding is not entitled to any bonuses at all (other than the bonuses she has already received). Dr. Codding therefore must allege non-conclusory facts that plead that Pearson Education's breach — limited to conduct after July 15, 2016 — was the proximate cause of PSoC sales falling short of the Threshold Amount. This she has not done. The court therefore dismisses Dr. Codding's breach-of-contract claim, with leave to amend and add additional facts.[48]

### 2. Anticipatory Breach

To plead a claim for anticipatory breach, a plaintiff must plead that "'(1) the other party absolutely and unequivocally refused to perform and (2) [the plaintiff] effectuated the other party's breach by materially changing [her] position and treating the repudiation as final.'" *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, No. C-11-2573 EMC, 2011 WL 6099394, at *8

---

[48] Should she amend her complaint, Dr. Codding should make clear what alleged conduct took place after July 15, 2016, as opposed to before.

1  (N.D. Cal. Dec. 7, 2011) (quoting *Shahani v. United Commercial Bank*, 457 B.R. 775, 783 (N.D. Cal. 2011) (citing *Guerrieri v. Severini*, 51 Cal. 2d 12, 19 (1958); *Wilton v. Clarke*, 27 Cal. App. 2d 1, 4 (1938))). Dr. Codding has not pleaded either of these elements here.

Dr. Codding does not plead that Pearson Education absolutely and unequivocally refused to perform under the parties' Agreements. Dr. Codding's first theory is that Pearson Education has not promoted PSoC and has "abandon[ed]" PSoC as a viable product.[49] But this is not an absolute and unequivocal refusal by Pearson Education to perform under the Agreements. *Cf. Martinez v. Scott Specialty Gases, Inc.*, 83 Cal. App. 4th 1236, 1246 (2000) ("[a]nticipatory breach must appear only with the clearest terms of repudiation of the obligation of the contract") (quoting *Guerrieri v. Severini*, 51 Cal. 2d 12, 18 (1958)). Dr. Codding's second theory is that Pearson plc and Pearson Education are in the process of selling their USLS division, where PSoC is housed, and that a sale of the USLS division "will necessarily result in 'sales' of 'the courses'" entitling Dr. Codding to her bonus payment, and that Pearson plc "has refused to acknowledge and has denied this obligation and has thereby anticipatorily breached the Employment Agreement and Agreement and Release with Dr. Codding."[50] To the extent that she is arguing that the sale of the USLS division itself should count toward her bonus calculations, her argument fails. The Agreements provide that Dr. Codding's bonus will be calculated based on sales of courses. A company division is not a "course," and hence any future sale of USLS itself would not count toward Dr. Codding's bonus. *Cf. L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 801 (9th Cir. 2017) ("courts must give a contract's terms their 'ordinary and popular' meaning, 'unless used by the parties in a technical sense or a special meaning is given to them by usage'") (quoting *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999)).[51] To the extent that she is arguing that the sale

---

[49] Compl. – ECF No. 20 at 17 (¶ 75).

[50] *Id.* at 18 (¶¶ 76–77).

[51] The examples of "sales" that the parties listed in the Agreement further confirm this plain-language reading. The Agreement discusses sales in the context of, among other things, "invoices," "shipments," "samples," "examination copies," and "other Pearson products and services," to be sold to "customers." Compl. – ECF No. 20 at 7–9 (¶ 25); Release Agreement ¶ 2(c) – ECF No. 20 at 27–28. None of this is consistent with the sale of a company division (where there would be no invoices, shipments, samples, copies, products and services, or customers).

of the USLS division will necessarily result in the sale of additional PSoC course offerings, her argument is conclusory: she pleads no facts to support a conclusion that a sale of the USLS division will necessarily result in the sale of more PSoC courses, much less PSoC sales that meet the Threshold Amount.[52]

Additionally, even if Dr. Codding had plausibly alleged that Pearson Education had absolutely and unequivocally refused to perform under the Agreements, she does not plead that she materially changed her position in any way. Where, as here, "Plaintiff has alleged no material chance in position so as to indicate that [she] has treated the repudiation as final [and, r]ather, . . . continues to assert the validity of the [parties' agreement] and Defendant's ongoing duty to act pursuant to that [agreement]," no claim for anticipatory breach can lie. *Cf. Clear Channel*, 2011 WL 6099394, at *8. The court therefore dismisses Dr. Codding's anticipatory-breach claim, with leave to amend.

### 3. Declaratory Judgment

Dr. Codding states that "[t]he Court should determine and declare that, when Pearson and Pearson Education have sold the U.S. Learning Services Division, they have an obligation to pay to Dr. Codding her . . . bonus for 'sales' of 'the courses' (also referred to herein as 'PSoC') under the Employment Agreement, as amended, and Agreement and Release."[53] This claim is subsumed within Dr. Codding's breach-of-contract claims, and dismissal is thus appropriate. *See, e.g.*, *Reyes*

---

[52] Dr. Codding raises a new argument in her Opposition not found in her complaint, namely, that the sale of the USLS division will make it impossible for Pearson Education to sell PSoC courses, and hence PSoC has impliedly anticipatorily breached the Agreements. Codding Opp'n – ECF No. 19 at 8–9. Not so. The Agreements are "binding upon . . . [the parties'] respective heirs, successors, and assigns." Release Agreement ¶ 17 – ECF No. 20 at 34. Even if Pearson Education sells the USLS division, its assign (the buyer) can continue selling PSoC course offerings and (if the sales meet the Threshold Amount) can pay Dr. Codding her bonus. Performance is not impossible, and Dr. Codding's allegations therefore do not plead an anticipatory breach. *See* 1 Witkin Summary of California Law § 889 (2017 ed.) ("[T]here is no implied repudiation unless the promisor actually puts it out of his or her power to perform. Thus, if a transfer to a third party is made subject to the rights of the purchaser, or under such other conditions as will protect these rights, there is no anticipatory breach.") (citing cases).

[53] Compl. – ECF No. 20 at 18 (¶ 80) (some internal quotation marks omitted).

*v. Nationstar Mortg.*, No. 15-CV-01109-LHK, 2015 WL 4554377, at *7 (N.D. Cal. July 28, 2015) ("[W]here a plaintiff seeks declaratory relief predicated on a separate claim for breach of contract, '[v]arious courts have held that, where determination of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate.'") (internal ellipsis omitted) (quoting *StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04329 MMM (Ex), 2006 WL 5720345, at *3–4 (C.D. Cal. May 2, 2006)).[54]

## CONCLUSION

The court grants Pearson Education's motion to dismiss. The dismissal is without prejudice, and Dr. Codding may file an amended complaint within 21 days of this order. (If she files an amended complaint, she must also file a blackline of her amended complaint against her original complaint as an attachment.) If Dr. Codding does not do so, the court will enter judgment in favor of Pearson Education and will direct the Clerk of Court to close this case.

**IT IS SO ORDERED.**

Dated: May 21, 2018

LAUREL BEELER
United States Magistrate Judge

---

[54] Dr. Codding's reliance *Cincinnati Insurance Company v. Berkshire Refrigerated Warehousing, LLC*, 149 F. Supp. 3d 867 (N.D. Ill. 2015), is misplaced. The plaintiff there was not bringing a companion breach-of-contract claim seeking payment from the defendant along with its claim for a declaratory judgment. To the contrary, the plaintiff there was seeking a declaratory judgment that it did *not* have to pay its counterparty under the contract, and brought no other claims with its claims for declaratory judgment. *Id.* at 869–70.