UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JUDY CODDING,<br><br>    Plaintiff,<br><br>v.<br><br>PEARSON EDUCATION, INC.,<br><br>    Defendant. | Case No. 18-cv-00817-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 37 |

## INTRODUCTION

This is a breach-of-contract case regarding bonus payments under an employment agreement — with a twist.

In 2010, plaintiff Judy Codding, an education professional, entered into an employment agreement ("Employment Agreement") with Pearson plc, an education and information company that provides curriculum assessment and other services to schools, school districts, and students. In 2016, Dr. Codding and a subsidiary of Pearson plc — Pearson Education, Inc. — entered into a release agreement ("Release Agreement"), which, among other things, (1) memorialized the termination of Dr. Codding's employment, (2) released Pearson Education and its affiliates, including Pearson plc, regarding any matter or event occurring before the signing of the Release Agreement (other than some exceptions not relevant here), and (3) modified the bonus provisions under the Employment Agreement, which were to survive after Dr. Codding's employment ended.

ORDER – No. 18-cv-00817-LB

The Employment Agreement, as modified by the Release Agreement, provided that Dr. Codding would receive certain monetary bonuses in the event that sales of the "Pearson System of Courses" ("PSoC") course offerings, which Dr. Codding helped to develop, exceeded a certain threshold dollar amount ("Threshold Amount") by the end of 2019. As of today, sales of PSoC course offerings have not exceeded that Threshold Amount. Dr. Codding alleges that Pearson plc and Pearson Education have failed to adequately promote and sell PSoC and that, had they done so, PSoC sales would have hit the Threshold Amount and she would be entitled to receive her bonuses. Dr. Codding alleges that Pearson plc and Pearson Education breached the implied covenant of good faith and fair dealing that attaches to the Agreements by not adequately promoting and selling PSoC.

The twist is that while Dr. Codding makes allegations against Pearson plc and Pearson Education, she is not actually suing Pearson plc — she is suing only Pearson Education. Her allegations grouping Pearson plc and Pearson Education together do not adequately plead that Pearson Education — the only defendant in this case — breached the Agreements in a way that caused her injury. The court therefore dismisses Dr. Codding's complaint, with leave to amend.

## STATEMENT[1]

### 1. The Parties

Dr. Codding is an education professional who, among other things, was the award-winning principal of Pasadena High School in Los Angeles County, was a charter principal of the Coalition of Essential Schools (a national high-school reform effort), was an education consultant to the Ministry of Education in the People's Republic of China and the U.S. Department of Defense Schools, and was a commissioner on the California Commission for the Establishment of Academic Content and Performance Standards.[2]

---

[1] Unless otherwise noted, the facts recited in the Statement are allegations from the Amended Complaint ("AC").

[2] AC – ECF No. 31-3 at 3 (¶¶ 9–10). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

Dr. Codding served as Chief Operating Officer and Vice President of the National Center on Education and the Economy ("NCEE"), a nonprofit policy and school reform company.[3] In 1998, in her capacity as COO and Vice President of NCEE, Dr. Codding co-founded America's Choice, Inc., as a nonprofit subsidiary of NCEE (that later became a for-profit entity) and served as its Chief Executive Officer and President.[4] NCEE launched America's Choice to implement a school-improvement model that features standards-based instructional materials, coaching and professional development for teachers, and catch-up programs for struggling students.[5] America's Choice worked with 2,000 schools in 38 states, including California.[6] America's Choice personnel were involved in writing the new Common Core State Standards in English language arts and math that have been adopted by 42 states, including California, and the District of Columbia, Puerto Rico, and other U.S. territories.[7]

Defendant Pearson Education is a wholly owned subsidiary of non-party Pearson plc, a British education and publishing company.[8] Pearson plc provides curriculum assessment and other services to schools, school districts, states, and directly to students.[9] In 2010, Pearson plc acquired America's Choice for $80 million.[10]

**2. The Employment Agreement**

In December 2010, following Pearson plc's acquisition of America's Choice, Pearson plc and Dr. Codding entered into a letter Employment Agreement, whereby Pearson plc hired Dr. Codding as its Managing Director for the Common Core System of Courses.[11] In December 2012, Pearson

---

[3] *Id.* at 2 (¶ 6).
[4] *Id.* (¶ 7).
[5] *Id.* (¶ 8).
[6] *Id.*
[7] *Id.*
[8] *Id.* at 3 (¶ 11).
[9] *Id.*
[10] *Id.* at 3–4 (¶ 13).
[11] *Id.* at 5 (¶ 14); Employment Agreement – ECF No. 31-1 at 28–30.

plc and Dr. Codding slightly amended the Employment Agreement by a written exchange of emails ("Email Amendment").[12] Marjorie Scardino, Pearson plc's then-CEO, signed the Employment Agreement on behalf of Pearson plc.[13] Pearson Education was not a signatory to the Employment Agreement.[14]

The Employment Agreement assigned Dr. Codding responsibility for overseeing two separate programs.[15] First, the Employment Agreement tasked Dr. Codding with "applying [her] knowledge and support in integrating and helping [Pearson plc] learn to operate [America's Choice], and [her] helping to sign up several customers, such as LA Unified School District and others."[16] The second program was described in the Employment Agreement as follows: "For comprehensive K-10/12 mathematics and literacy courses designed to apply the philosophy of the Common Core State Standards: These courses will cover approximately 150 days of instruction, use multi-media delivery platforms, and have the distinction of being a system of learning through the grades, of engaging students and of being easy for teachers to use."[17] For her services, Dr. Codding was paid a salary and given specified employment benefits.[18]

Under the Employment Agreement, Dr. Codding was entitled to bonus amounts "based on the amount of sales Pearson [plc] made of the products for which for which Dr. Codding was responsible as Managing Director, referred to as the 'Pearson System of Courses' or 'PSoC.'"[19] Paragraphs 2(b) and 2(c) of the Employment Agreement (as amended) set out Dr. Codding's bonuses.[20] Dr. Codding acknowledges that Pearson plc paid her the bonuses set out in paragraphs

---

[12] AC – ECF No. 31-3 at 5 (¶ 15); Email Amendment – ECF No. 31-3 at 31.

[13] AC – ECF No. 31-3 at 5 (¶ 14); Employment Agreement – ECF No. 31-1 at 30. Ms. Scardino also wrote and sent Dr. Codding the Email Amendment. Email Amendment – ECF No. 31-3 at 31.

[14] *See* Employment Agreement – ECF No. 31-3 at 30.

[15] AC – ECF No. 31-3 at 5 (¶ 16).

[16] *Id.* (¶ 17).

[17] *Id.* (¶ 18).

[18] *Id.* (¶ 19).

[19] *Id.* (¶ 20).

[20] Employment Agreement ¶ 2(b), 2(c) – ECF No. 31-3 at 29; *see also* Email Amendment – ECF No. 31-3 at 31 (amending paragraph 2(c)(ii)).

2(b) and 2(c)(i), and hence this action relates solely to the bonuses set out in paragraphs 2(c)(ii) and 2(c)(iii).[21]

Paragraph 2(c)(ii) provides that once PSoC sales exceed a certain specified Threshold Amount, Dr. Codding would receive a set bonus amount.[22] Paragraph 2(c)(iii) provides that Dr. Codding would additionally receive a percentage royalty as an additional bonus for all PSoC sales over the Threshold Amount, up to a specified ceiling.[23]

### 3. The Release Agreement

On July 15, 2016, Dr. Codding and Pearson Education entered into a Release Agreement.[24]

The Release Agreement's first paragraph states that it "set[s] forth the agreement between [Dr. Codding] and Pearson Education, Inc. and its affiliates (collectively, the 'Company') regarding [Dr. Codding's] separation from the Company."[25] It then states, "[a]s an initial matter, we acknowledge that you and Pearson are parties to an employment agreement dated December 16, 2010, as amended on December 21, 2012 (the 'Employment Agreement')."[26] It recites that it "contemplates the survival of certain terms under the Employment Agreement, and [] amend[s] certain terms of the Employment Agreement, as . . . described . . . below."[27] Among other things, the Release Agreement covers three areas relevant to this dispute:

1. First, "[t]he parties acknowledged that [Dr. Codding's] work under the Employment Agreement is finished, and [her] employment with the Company terminated on October 16, 2015 ('Separation Date')."[28]

---

[21] AC – ECF No. 31-3 at 7 (¶ 25).

[22] *Id.* at 6 (¶ 25); Employment Agreement ¶ 2(c)(ii) – ECF No. 31-3 at 29; Email Amendment – ECF No. 31-3 at 31.

[23] AC – ECF No. 31-3 at 6–7 (¶ 25); Employment Agreement ¶ 2(c)(iii) – ECF No. 31-3 at 29.

[24] AC – ECF No. 31-3 at 6 (¶ 21); Release Agreement – ECF No. 31-3 at 33–43.

[25] Release Agreement – ECF No. 31-3 at 33.

[26] *Id.*

[27] AC – ECF No. 31-3 at 6 (¶ 22); Release Agreement – ECF No. 31-3 at 33.

[28] Release Agreement – ECF No. 31-3 at 33 (¶ 1).

ORDER – No. 18-cv-00817-LB          5

2. Second, "the parties agree[d] on [certain] amendments and clarifications of the terms and conditions of [the] Employment Agreement."[29] Among other things, the Release Agreement extended the time period that PSoC sales would count for the purposes of calculating Dr. Codding's bonus through to the end of 2019.[30]

3. Third, the parties stated that "[t]he consideration [Dr. Codding] receive[d] under this Agreement and Release is in complete discharge, release, and satisfaction of all obligations and liabilities [other than certain exceptions not relevant here] of Pearson Education, Inc. and its affiliates, including but not limited to Pearson, Inc., Pearson plc, Pearson Education Holdings, Inc., Pearson Education and Assessment, Inc., The Pearson Charitable Foundation, NCS Pearson, Inc., and all of their respective officers, directors, employees, bonus and/or compensation plans (collectively, the 'Release Parties') with regard to any matter or event whatsoever that occurred or happened up to the date of this Agreement and Release, including but not limited to matters regarding [her] employment with the Company and its termination."[31]

The Release Agreement uses the term "Pearson" (without a suffix) in a number of places. (For example, it recites that Dr. Codding and "Pearson" were parties to an Employment Agreement[32] and that "Pearson" would be invoicing and including various PSoC sales for the purposes of calculating Dr. Codding's bonus.[33]) It does not expressly define the term "Pearson."

---

[29] *Id.* at 34 (¶ 2).

[30] AC – ECF No. 31-3 at 8 (¶ 26); Release Agreement – ECF No. 31-3 at 36 (¶ 2.c).

[31] Release Agreement – ECF No. 31-3 at 37 (¶ 7.a).

[32] *Id.* at 33.

[33] *Id.* at 34–36 (¶ 2).

ORDER – No. 18-cv-00817-LB    6

**4. Pearson plc's and Pearson Education's Efforts to Sell the Pearson System of Courses**

**4.1 Selling PSoC**

Dr. Codding alleges that "[t]he United States K–12 comprehensive-curriculum market spends some $3 billion each year" and the K–12 English language arts ("ELA") and math curriculum market spends approximately $2 billion each year.[34] California alone spends approximately $520 million per year on curriculum materials, and approximately 75% of this for math and ELA.[35]

California and New Mexico adopted the PSoC ELA and math curricula, which were on both states' approved lists.[36] Once adopted, curricula remain on the adoption list for a typical five- to seven-year adoption cycle.[37] Dr. Codding alleges that after July 15, 2016 and through to the present, Pearson plc and Pearson Education have done virtually nothing to sell PSoC in California or New Mexico.[38] Dr. Codding claims that Pearson plc has falsely stated that it does not have an ELA product approved in California and that this is the reason for its lower textbook revenue over the past several years.[39] In fact, Pearson plc does have an approved ELA product — PSoC, the only Pearson plc ELA product that was adopted in California in the current adoption cycle — and could have sold PSoC in California beginning in August 2016.[40]

Dr. Codding alleges that Pearson plc has abandoned any meaningful efforts to sell the PSoC math and ELA programs.[41] Pearson plc's 2016 and 2017 annual reports state that, among other things, Pearson plc made a "decision not to compete for the California Grades K–8 English Language Arts (ELA) adoption with a core basal programme."[42] Additionally, after July 15, 2016

---

[34] AC – ECF No. 31-3 at 13 (¶ 44).

[35] *Id.*

[36] *Id.* at 12 (¶ 37). California has adopted PSoC only for grades K–8 because it does not have an adoption process for high schools. *Id.* at 13 (¶ 45).

[37] *Id.* at 12 (¶ 37).

[38] *Id.* (¶ 40).

[39] *Id.* (¶ 38).

[40] *Id.* (¶¶ 38–39).

[41] *Id.* at 16 (¶ 75).

[42] *Id.* at 16–18 (¶¶ 76, 80).

and through to the present, Pearson plc and Pearson Education have done nothing to have the PSoC math and ELA curriculum adopted in any of the other 15 "adoption states," which (along with California and New Mexico) represent approximately 48% of "the total market."[43] For example, Texas is a major market for school textbooks.[44] It is currently going through an adoption process for textbooks.[45] Pearson plc has not done anything to have Texas adopt PSoC.[46]

Dr. Codding additionally alleges that PSoC goes from grades K–12 in ELA and K–11 in math, matched to the grades in the Common Core State Standards.[47] PSoC was a finalist in an international design competition in Denmark and in another in the United States.[48] At no time after July 15, 2016 did Pearson plc or Pearson Education submit PSoC to EdReports, a national nonprofit organization that reviews educational materials for alignment to the Common Core Standards.[49] Pearson plc and Pearson Education have, however, submitted other Pearson curriculum material to EdReports.[50]

Dr. Codding additionally alleges that Pearson plc maintains a nominal website for PSoC but that the website is "moribund" and has not been updated since 2015.[51] The opening webpage for Pearson plc's current website for its "Math Curriculums and Textbooks" does not show PSoC at all (unless the viewer clicks on a "show more" button, after which PSoC appears at the very bottom of Pearson plc's list).[52] Additionally, since this lawsuit began, Pearson plc has deleted

---

[43] *Id.* at 13 (¶ 41).
[44] *Id.* (¶ 42).
[45] *Id.*
[46] *Id.*
[47] *Id.* (¶ 46).
[48] *Id.* (¶ 47).
[49] *Id.* (¶ 48).
[50] *Id.*
[51] *Id.* at 21 (¶ 100).
[52] *Id.* (¶¶ 101–02).

pages on its website that referenced Dr. Codding and the value of PSoC's math and ELA curricula.[53]

### 4.2 Sales Force Incentives

Dr. Codding alleges that after July 15, 2016 and through the present, Pearson plc and Pearson Education have incentivized their sales force to sell other Pearson products and disincentivized their sales force from selling PSoC.[54]

With respect to Pearson plc, Dr. Codding alleges that Pearson plc's sales personnel have received no credit for selling PSoC in connection with their evaluations and consideration for promotion within the company.[55] After the adoption of the PSoC ELA courses in California, Pearson plc did no marketing or sales for the 2016–2017 or 2017–2018 school years.[56] Since July 15, 2016, Pearson plc has sold less than $2 million of PSoC nationwide, none of which were the result of any affirmative sales activity by Pearson plc.[57] Since July 15, 2016, Pearson plc has responded to hundreds of requests for proposals ("RFPs") for course materials but has included PSoC in fewer than five responses to these RFPs.[58] Additionally, Pearson plc has used elements of both the content and pedagogical design from PSoC, has embedded them in its other core course products, and is marketing and selling those other core products and including them as part of its sales force's quotas, without counting those sales towards Dr. Codding's bonus targets.[59]

With respect to Pearson Education, Dr. Codding alleges that Pearson Education has not included PSoC within its core products.[60] Pearson Education's sales team leaders in general have instructed their sales force not to present or sell PSoC and instead to sell Pearson's other products

---

[53] *Id.* at 22 (¶¶ 109–11).
[54] *Id.* at 14 (¶ 51).
[55] *Id.* (¶ 54).
[56] *Id.* (¶ 55).
[57] *Id.*
[58] *Id.* at 16 (¶ 73).
[59] *Id.* at 22 (¶ 108).
[60] *Id.* at 16 (¶ 72).

that count toward their sales quotas.[61] Pearson Education sales personnel receive incentives to sell Pearson products.[62] After July 15, 2016 and through the present, Pearson Education has never counted PSoC toward a Pearson Education salesperson's sales quota.[63] A salesperson could sell PSoC outside of his or her quota but would receive only a 4% commission instead of a larger (unspecified) commission awarded for other Pearson products, creating a disincentive for the sales force to sell PSoC products.[64]

### 4.3 Showing PSoC at National Education Conferences

Every year, all of the national education associations have national conferences, and many also have regional and state conferences.[65] Thousands of people attend each of these conferences, and Dr. Codding alleges that these conferences are one of the best ways to reach educators.[66] All of the major education suppliers, including Pearson Education, participate and have booths to showcase their products and services.[67] The publishers include all their textbooks and instructional materials and often invite the authors to be there to talk with customers.[68] The publishers frequently make sure their authors are on panels and make presentations at these conferences.[69]

Before joining Pearson plc, Dr. Codding attended many of these conferences, keynoted several of them, and spoke at many of them.[70] After joining Pearson plc, Dr. Codding and her team offered on numerous occasions to attend these conferences and present on PSoC.[71] Pearson plc

---

[61] *Id.* (¶ 73).
[62] *Id.* at 14 (¶ 52).
[63] *Id.* (¶ 53).
[64] *Id.*
[65] *Id.* (¶ 57).
[66] *Id.* at 15 (¶ 58).
[67] *Id.* (¶ 59).
[68] *Id.* (¶ 60).
[69] *Id.* (¶ 61).
[70] *Id.* (¶ 63).
[71] *Id.* (¶ 64).

1  never invited or asked any of them to attend any of the conferences.[72] (Dr. Codding does not allege whether this alleged failure to invite or ask her and her team to participate occurred before or after July 15, 2016.[73])

Dr. Codding alleges that after July 15, 2016 and through the present, Pearson plc and Pearson Education have rarely, if ever, presented or showcased PSoC at any of these conferences.[74]

### 4.4 Meeting the Threshold Amount

Dr. Codding alleges that if Pearson plc had devoted the same efforts after July 15, 2016 toward selling PSoC that it had devoted to other course products, PSoC sales would have reached the levels necessary for her bonus to be awarded to her.[75] Dr. Codding supports these allegations with a number of putative analyses of Pearson plc's reported sales figures and sales projections.[76]

Dr. Codding does not allege that if Pearson Education had exerted efforts to sell PSoC, PSoC sales would have reached the levels necessary for Dr. Codding's bonuses to be awarded to her. Dr. Codding recites a number of times that if Pearson plc *and* Pearson Education had devoted meaningful efforts toward selling PSoC, PSoC sales would have reached the levels necessary for her bonus to be awarded to her,[77] but she never makes this allegation with respect to Pearson Education alone apart from Pearson plc, nor does she support this allegation with any analyses of Pearson Education's reported sales figures, sales projections, or other information.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[72] *Id.* (¶ 65).

[73] *See id.* (¶¶ 63–65).

[74] *Id.* (¶ 67).

[75] *Id.* at 19 (¶ 88).

[76] *See id.* at 19–20 (¶¶ 89–97), 21–22 (¶¶ 103–05).

[77] *Id.* at 14 (¶¶ 50, 56), 15–16 (¶¶ 68–69), 19–20 (¶¶ 93, 98), 22 (¶ 106), 23 (¶¶ 116–18).

ORDER – No. 18-cv-00817-LB            11

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. Breach of Contract

Dr. Codding does not allege that Pearson Education breached an express term of the Agreements. Instead, she alleges that Pearson Education breached the implied covenant of good faith and fair dealing.[78]

---

[78] AC – ECF No. 31-3 at 11–12 (¶¶ 31–34), 23 (¶¶ 114–18).

### 1.1 Governing Law

The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995)). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required her to do or that she was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *Qingdao Tang-Buy Int'l Import & Export Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-cv-00624-LB, 2016 WL 6524396, at *5 (N.D. Cal. Nov. 3, 2016) (citing Judicial Council of California Civil Jury Instructions § 325 (2011); *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007)). Regarding the last element — that the defendant's conduct harmed the plaintiff — "'[c]ausation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain.'" *Siqueiros v. Fed. Nat'l Mortg. Ass'n*, No. EDCV 13-01789-VAP (DTBx), 2014 WL 3015734, at *5 (C.D. Cal. June 27, 2014) (quoting *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997)). "'The test for causation in a breach of contract action is whether the breach was a substantial factor in causing the damages.'" *Id.* (internal ellipsis omitted) (quoting *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 909 (2005)). "'[M]ere conclusory statements do not suffice' to sufficiently state a breach of contract cause of action." *Ketab Corp. v. Mesriani & Assocs., P.C.*, __ F. App'x __, No. 15-56753, 2018 WL 2041424, at *5 (9th Cir. May 2, 2018) (internal ellipsis omitted) (quoting *Iqbal*, 556 U.S. at 678); *accord, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012).

**1.2 Application**

Pearson Education assumes for the purposes of its motion to dismiss that it was a party to the Employment Agreement.[79] It argues, however, that Dr. Codding does not adequately plead that its alleged breach proximately caused her injury or that causation is at least reasonably certain. The court agrees. Dr. Codding claims that had Pearson plc and Pearson Education exerted reasonable or best efforts, they would have made enough PSoC sales to meet the Threshold Amount necessary for her to receive her bonuses. These allegations fail to adequately plead causation with respect to the only defendant in this case, Pearson Education.

Dr. Codding's complaint lumps Pearson plc and Pearson Education together.[80] "Courts consistently conclude that a complaint which lumps together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)," *Boyer v. Becerra*, No. 17-cv-06063-YGR, 2018 WL 2041995, at *7 (N.D. Cal. Apr. 30, 2018) (citations and internal quotation marks, brackets, and ellipsis omitted) — and here, of course, Pearson plc is not even a defendant. Dr. Codding does not allege that Pearson plc and Pearson Education are alter egos, disregarded their separate corporate form, or failed to distinguish between each other. Nor does Dr. Codding plead that the specifics of Pearson plc's and Pearson Education's interactions are unknown to her, particularly in light of the five years she worked for Pearson plc. *Cf. In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184–85 (N.D. Cal. 2009) (denying motion to dismiss conspiracy claims where plaintiffs grouped together corporate affiliates but also alleged that the defendants did not "distinguish between the entities within a corporate family" and "sufficiently

---

[79] Pearson Educ. Reply – ECF No. 41 at 7.

[80] Dr. Codding similarly conflates Pearson plc and Pearson Education in her opposition brief. For example, in her opposition, she argues that "[a]s alleged in ¶ 108, Pearson Education has used elements of both the content and pedagogical design from PSoC and has embedded them in its other core course products." Codding Opp'n – ECF No. 40 at 13. Her actual complaint, however, makes these allegations against Pearson plc, not Pearson Education. AC – ECF No. 31-3 at 22 (¶ 108) (making allegations against "Pearson," not "Pearson Education"); *id.* at 3 (¶ 11) (defining "Pearson" as "Pearson plc").

allege[d] each defendant['s] participation in that conspiracy"). Without more, allegations against non-party Pearson plc do not plead a claim against defendant Pearson Education.[81]

Looking solely at Dr. Codding's allegations against Pearson Education, the court finds that they are conclusory. Among other things, Dr. Codding does not allege any sales figures, sales projections, or any other facts or data that support her conclusion that had Pearson Education exerted reasonable or best efforts, it would have been able to make enough PSoC sales to meet the Threshold Amount. Dr. Codding includes some analyses of Pearson plc's sales figures and sales projections — but Pearson plc is not the defendant in this case, and these analyses do not support a conclusion about Pearson Education.[82] Dr. Codding does allege that Pearson Education, as distinct from Pearson plc, disincentivized its sales force from selling PSoC and incentivized them to sell other Pearson products. But she does not allege facts that plead that Pearson Education, had it not disincentivized its sales force, would have sold enough PSoC to meet the Threshold Amount necessary for Dr. Codding to receive any bonuses. In order to plead a claim against Pearson Education, Dr. Codding must non-conclusory facts that plead that Pearson Education's breach was the proximate cause of PSoC sales falling short of the Threshold Amount. This she has not done. The court therefore dismisses Dr. Codding's breach-of-contract claim.

The court grants Dr. Codding one final opportunity to amend her complaint. Should she file an amended complaint and continue to name only Pearson Education (and not Pearson plc) as a defendant, she should make clear what duties Pearson Education (as opposed to Pearson plc) had to her, how Pearson Education (as opposed to Pearson plc) allegedly breached the Agreements, and how Pearson Education's breach (as opposed to Pearson plc's) caused her injury.

---

[81] At the motion hearing held on July 19, 2018, Dr. Codding stated that she could amend her complaint to clarify that her allegations against Pearson plc could also be made against Pearson Education. The court afforded her an opportunity to do so. Order – ECF No. 46 ("The plaintiff stated that she could amend her complaint to clarify what she is alleging against Pearson Education (as opposed to Pearson plc) should the court wish her to do so. The court hereby grants leave for the plaintiff to amend her complaint to change allegations made against Pearson plc, or Pearson plc and Pearson Education collectively, to allegations against Pearson Education, to the extent that she can do so consistent with her pleading obligations."). Dr. Codding declined to avail herself of this opportunity.

[82] The court expresses no opinion as to whether Dr. Codding's analyses of Pearson plc's sales figures and sales projections are sufficiently non-conclusory so as to plead a claim against Pearson plc.

## 2. Anticipatory Breach

To plead a claim for anticipatory breach, a plaintiff must plead that "'(1) the other party absolutely and unequivocally refused to perform and (2) [the plaintiff] effectuated the other party's breach by materially changing [her] position and treating the repudiation as final.'" *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, No. C-11-2573 EMC, 2011 WL 6099394, at *8 (N.D. Cal. Dec. 7, 2011) (quoting *Shahani v. United Commercial Bank*, 457 B.R. 775, 783 (N.D. Cal. 2011) (citing *Guerrieri v. Severini*, 51 Cal. 2d 12, 19 (1958); *Wilton v. Clarke*, 27 Cal. App. 2d 1, 4 (1938))).

Dr. Codding's claim for anticipatory breach fails for at least two reasons. First, like her breach-of-contract claim, her anticipatory-breach claim improperly groups Pearson Education with non-party Pearson plc. Second, even setting that issue aside, Dr. Codding does not plead that either Pearson Education or Pearson plc absolutely and unequivocally refused to perform under the Employment Agreement. Dr. Codding argues in her opposition that "Pearson [plc] and Pearson Education. . . put it out of their power to perform so as to make substantial performance impossible,"[83] but she does not cite to factual allegations in her complaint that support this conclusion. The Agreements provide that PSoC sales will count toward the calculation of Dr. Codding's bonus through the end of 2019. Dr. Codding has not alleged that either Pearson Education or Pearson plc has either (1) absolutely and unequivocally refused to make more PSoC sales or (2) done anything to make it impossible to make PSoC sales by then.[84] The court therefore dismisses Dr. Codding's anticipatory-breach claim, with leave to amend.

---

[83] Codding Opp'n – ECF No. 40 at 16.

[84] Dr. Codding argues that "Pearson Education's very posture before the Court confirms that it has absolutely and unequivocally refused to fulfill its contractual duty to Dr. Codding." Codding Opp'n – ECF No. 40 at 15. But defending oneself in a breach-of-contract lawsuit, including making arguments in that lawsuit that the contract may be unenforceable, etc., does not constitute an anticipatory breach. *Cf. Great Am. E & S Ins. Co. v. Kouw Pinnq Enter. Co., Ltd.*, No. EDCV 13-00715-VAP (DTBx), 2013 WL 5461911, at *5 (C.D. Cal. Sept. 20, 2013) (plaintiff's filing and litigating a lawsuit to rescind a contract does not constitute an anticipatory breach, because, among other things, the plaintiff could lose, remain bound by the contract, and then still perform, and therefore its litigation does not qualify as an "absolute and unequivocal" refusal to perform).

## CONCLUSION

The court grants Pearson Education's motion to dismiss. The court extends Dr. Codding a final opportunity to amend; she may file an amended complaint within 21 days of this order. (If she files a new amended complaint, she must also file a blackline of her new amended complaint against her current amended complaint as an attachment.) If Dr. Codding does not do so, the court will enter judgment in favor of Pearson Education and will direct the Clerk of Court to close this case.

**IT IS SO ORDERED.**

Dated: July 27, 2018

_____
LAUREL BEELER
United States Magistrate Judge