1  Loren Kieve (56280)
   KIEVE LAW OFFICES
2  2655 Steiner Street
   San Francisco, CA 94115
3  415 364-0060
   lk@kievelaw.com
4
   Counsel for Plaintiff
5  Judy Codding

6

7

8

9              UNITED STATES DISTRICT COURT FOR THE

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        San Francisco Division

12 | JUDY CODDING,
   |
   |              Plaintiff,                    Case No. 3:18-cv-00817-LB
13 |
   |         vs.                                OPPOSITION TO MOTION TO DISMISS
14 |                                            THE SECOND AMENDED COMPLAINT
   | PEARSON EDUCATION, INC.
15 |
   |              Defendant.                    Hearing Date:  September 27, 2018
16 |
                                                Hearing Time:  9:30 a.m.
17

18

19

20

21

22

23

24

25

26

27

28
   Opposition to Motion to Dismiss Second                        Case No. 3:18-cv-00817-LB
   Amended Complaint

Plaintiff Judy Codding ("Dr. Codding") respectfully submits that her Second Amended Complaint addresses the Court's concerns in its two prior orders, ECF Docs. 30, 47.

The Second Amended Complaint plainly alleges that (a) Dr. Codding was hired by defendant Pearson Education, Inc. ("Pearson Education"), (b) her employment agreement and subsequent agreements were with Pearson Education and (c) it is Pearson Education that has (i) breached those agreements and (ii) anticipatorily breached them by making it impossible to meet the sales levels in those agreements for Dr. Codding to receive her promised bonuses, and thereby proximately damaging Dr. Codding.

### *Dr. Codding Has Made It Plain that She Is Suing Pearson Education.*

The Second Amended Complaint alleges:

> 13.  Following Pearson's acquisition of America's Choice, on December 16, 2010, Dr. Codding and Pearson entered into a letter agreement, a copy of which is attached as Exhibit A, where Pearson hired Dr. Codding to be Pearson Education's Managing Director for the Pearson System of Courses (the "Employment Agreement"). The letter agreement was signed on behalf of Pearson by Marjorie Scardino, Pearson's Chief Executive Officer at the time. Although the Employment Agreement was signed by the CEO of Pearson, the System of Courses was to be a product of Pearson Education.

> 14.  At all material times, Dr. Codding was employed and compensated by Pearson Education. As Pearson Education stated to this Court in a prior filing, "On December 16, 2010, Defendant Pearson Education, Inc. ("Pearson") hired plaintiff Dr. Judy Codding to develop and market educational products." ECF Doc. 17 at 6:3-4.

> 15.  Pearson Education then immediately confirmed to this Court that Dr. Codding was employed by Pearson Education – which Pearson Education itself defined with the one-word term "Pearson" – and that she subsequently "left her employment at **Pearson [Education]** (*sic*) and the ***parties*** (*sic*) executed an agreement to govern the terms of her separation. ECF Doc. 17 at 6:8-9 (emphasis added).

> 16.  Dr. Codding's salary was paid by Pearson Education.

> 17.  Dr. Codding received W-2 forms from Pearson Education.

> 18.  Dr. Codding's initial stock bonus was in the form of Pearson plc American Depository Receipts ("ADRs"). All her other bonuses were paid for by Pearson Education.

The Second Amended Complaint then completes the circle in ¶ 27:

> 27.  Effective July 15, 2016, Dr. Codding and Pearson Education, Inc. entered into a letter "Agreement and Release" that, as it states, acknowledged that Dr. Codding and Pearson Education, Inc. were "parties to an employment agreement dated December 16, 2010, as amended on December 21, 2012 (the 'Employment Agreement')." A copy of the Agreement and Release is attached as Exhibit B. The Agreement and Release was signed on behalf of Pearson Education by George B. Costello, Pearson Education's Senior Vice-President and Associate General Counsel, Human Services.

Pearson Education nowhere argues that Dr. Codding has not made plain what entity she is suing, and for what. The Court may simply stop here to deny Pearson Education's motion.

### *The Second Amended Complaint Alleges Breach of the Duty to Use Best Reasonable Efforts.*

#### *California Law Requires a Contracting Party to Use Its Best Reasonable Efforts.*

The Court's Order dismissing the (first) Amended Complaint, ECF Doc. 47, did not address this issue. Presumably, the Court was satisfied that Dr. Codding's Amended Complaint had satisfied, at least for Rule 12(b)(6) purposes, the pleading standard for breach of the covenant of good faith and fair dealing, and this is now the law of the case. *Schwarz v. Meinberg,* No. CV1300356BROPLAX, 2016 WL 4744179, at *3 (C.D. Cal. Sept. 8, 2016); *Washington v. Geo Grp., Inc.,* No. 3:17-5806-RJB, 2018 WL 1083862, at *4 (W.D. Wash. Feb. 28, 2018),

Pearson Education's arguments [ECF Doc. 52-3 at 5:8 *et seq.*] are nevertheless still off the mark. Covenants to use "good faith" or "best efforts" to generate profits for a licensor are "routinely implied where the licensor grants exclusive promotional or licensing rights in exchange for a percentage of profits or royalties," even though the licensee does not expressly promise to do anything. (See *Third Story Music, Inc. v. Waits* (1995) 41 Cal. App. 4th 798, 805, 48 Cal.Rptr.2d 747 (*Third Story Music*) [Although the contract does not promise in so many words that the licensee will use its ***best efforts***, "'*such a promise is fairly to be implied*. The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be "instinct with an obligation," imperfectly expressed' (quoting *Wood v. Lucy, Lady Duff–Gordon* (1917) 222 N.Y. 88 [118 N.E. 214] (Cardozo, J.))].) *Wolf v. Walt Disney Pictures & Television,* 162 Cal. App. 4th 1107, 1120 (2008), *as modified on denial of reh'g* (June 4, 2008) (citations omitted) (emphasis added).

Whatever may be Second Circuit (or New York) law in manifestly distinguishable cases [see ECF Doc. 52-3 at 16], in California the law will imply that, under its agreements with Dr. Codding, Pearson Education "was obligated in good faith and by its reasonable ***and best efforts*** to develop, exploit, produce and make sales" of the PSoC products Dr. Codding had developed for it.

Opposition to Motion to Dismiss Second Amended Complaint          2          Case No. 3:18-cv-00817-LB

*Brawley v. Crosby Research Found.*, 73 Cal. App. 2d 103, 112, 166 P.2d 392 (1946) (emphasis added).  Dr. Codding is not aware that *Brawley* has been overruled or modified.

Under the terms of the 2010 Employment Agreement, as amended in 2012 and further amended by the 2016 Agreement and Release, Pearson Education therefore had and has a continuing duty of good faith and fair dealing beginning on July 16, 2016 and continuing to this day to use reasonable best efforts to make the sales of PSoC that would provide the promised bonus payments to Dr. Codding and not frustrate the terms of those agreements.

The Court set out the elements of the breach in its previous order:

> To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required her to do or that she was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.

ECF Doc. 30 at 8:23-9:3 (citations omitted).

The Second Amended Complaint alleges these elements. The parties entered into a contract. Dr Codding did all she was required to do. All conditions required for Pearson Education's performance had occurred. It interfered with Dr. Codding's right to her bonus by not only ***not*** using its best efforts, but doing everything it could to make it impossible for Dr. Codding to receive her bonus. And Dr. Codding was harmed as a result. Second Amended Complaint, ECF Doc. 50, *passim.*

At this pleading stage, Dr. Codding has therefore alleged breach of contract. The Court's Order addressing Dr. Codding's (first) Amended Complaint found no fault in Dr. Codding's allegations of breach of contract, only that it did not plainly set out that it was Pearson Education that was in breach (as opposed to a non-party, Pearson plc). This too should be the law of the case. The Second Amended Complaint has now cured this deficiency, and Dr. Codding respectfully submits that the Court needs no further disquisition to deny Pearson Education's motion.

### ***The Second Amended Complaint Alleges Breach of Pearson Education's Duty to Use Reasonable Best Efforts to Sell PSoC After July 15, 2016.***

Pearson Education's base argument – that the Second Amended Complaint does not allege breach of contract and anticipatory breach – is meritless in any event.

*Pearson Education Disincentivized Its Salesforce Not to Sell PSoC.*

In paragraphs ¶¶ 57-63, the Second Amended Complaint details how Pearson Education has affirmatively disincentivized its sales staff not to market and sell PSoC and that, had it incentivized them to sell PSoC, it would have met the bonus sales levels.

*Pearson Education Has Not Shown PSoC at National Education Conferences.*

In paragraphs ¶¶ 64-74, the Second Amended Complaint then describes how Pearson Education has not used a recognized method of selling textbooks – by showing and marketing them at national education conferences – to sell and market PSoC.

It then alleges in ¶¶ 75-76 that:

> 75. Had Pearson Education showcased or presented PSoC at these conferences after July 15, 2016 and to the present time, it would have generated substantial sales toward achieving the sales levels that would have resulted in Dr. Codding receiving a [**redacted**] bonus.
>
> 76. The failure of Pearson Education to showcase or present PSoC at these conferences was a substantial proximate cause of its not achieving the PSoC sales levels that would require it to pay Dr. Codding her bonus.

*Pearson Education Has Relegated PSoC to the Dustbin, Damaging Dr. Codding.*

The Second Amended Complaint alleges in ¶¶ 77-84 and 91-95 that, after July 15, 2016, Pearson Education has abandoned PSoC and not included it in its key core products.

It alleges, with factual support coming from Pearson Education's own data, that:

> 85. Had Pearson Education not abandoned PSoC sales after July 15, 2016, its new adoption rate would not have "f[allen] from over 90% in 2015 to 64% in 2016" and Pearson Education would have generated sufficient sales to meet the levels required for Dr. Codding to receive her promised bonus.
>
> 86. This is confirmed by Pearson Education's admission that, for those courses it did promote, Pearson Education "won an estimated 30% share of adoptions competed for (31% in 2015) and 19% of total new adoption expenditure of $470m (29% of $730m in 2015)" – amounts that, had they been achieved for the abandoned PSoC courses, would have led to Dr. Codding receiving her promised bonus.
>
> 87. This $470 million in revenue came largely from two states – Indiana and South Carolina. Had Pearson Education not abandoned all efforts to sell PSoC in California – the largest single market for math and ELA course materials in the country – it easily would have achieved sales far in excess of the levels necessary for it to owe Dr. Codding her bonus.
>
> 88. Pearson confirmed this in its 2017 Annual Report (*i.e.,* for the full year) (at page 42) (emphasis added), again including sale and financial performance results for

Opposition to Motion to Dismiss Second Amended Complaint     4     Case No. 3:18-cv-00817-LB

Pearson Education's North American operations (and again claiming incorrectly that PSoC ELA had not been adopted in California):

> In school, revenue declined high-single digits primarily due to sharp declines across Open Territory states in the second half of the year. This was partially offset by growth in Adoption state revenues where strong performance in Texas Grades K-12 Spanish, **Indiana** Grades K-12 Science and **South Carolina** Grades 6-8 Science outweighed *a lower adoption participation rate resulting from our decision not to compete for the California Grades K-8 English Language Arts (ELA) adoption with a core basal programme.*
>
> Our new adoption participation rate fell to 61% from 64% in 2016. *We won an estimated 38% share of adoptions competed for (30% in 2016) and 29% of total new adoption expenditure of $365m (19% of $470m in 2016).*

89. Had Pearson Education not abandoned PSoC in favor of other competing courses, its "new adoption participation rate" would not have fallen "to 61% from 64% in 2016" and sales of PSoC in California and other states would have been sufficient to have Dr. Codding receive her bonus.

90. Notwithstanding Pearson Education's statements to the contrary, the PSoC math and ELA programs had been adopted by the State of California so that PSoC could and should have been sold in California had Pearson Education not abandoned all efforts to do so in breach of its contractual obligations to Dr. Codding.

***Had Pearson Education Used Its Best Reasonable Efforts, It Would Have Met the Bonus Triggers.***

The Second Amended Complaint sets forth detailed facts – again from Pearson Education's own public statements – confirming that, had it not abandoned PSoC, Pearson Education would have met the sales numbers entitling Dr. Codding to her substantial bonus. These allegations are in no way "conclusory," but based on hard data and analyses coming directly from Pearson Education itself and other reliable sources of information:

96. Had Pearson Education devoted the same efforts after July 15, 2016 toward selling PSoC that it devoted to other course products, PSoC sales levels would have reached the levels necessary for Dr. Codding's bonus to be awarded to her.

97. This is confirmed by five separate factual analyses.

98. ***First,*** Pearson's 2017 Annual Report (reporting on Pearson Education's North American operations) reflects (on page 134) that Pearson Education sold £394 million in school courseware in North America during 2017. At a conversion rate of £1 to $1.34, that equates to $528 million.

99. Pearson's 2017 Annual Report reflects (on page 135) that Pearson Education sold £418 million in school courseware in North America during 2016. At a conversion rate of £1 to $1.34, that equates to $560 million.

100. As set out in ¶¶ 31 and 33, above, Dr. Codding's bonus is based on all sales after 2012 (not just sales after the date of the Agreement and Release) to the end of 2019.

101. Adding this 2016 $560 million of course sales revenue to the 2017 course sales revenue of $528 million produces total 2016-17 course sales revenue of $1.088 billion, not including any sales in 2018. Assuming that Pearson Education has roughly the same amount of sales for the first half of 2018, or approximately $250 million, the total sales for the two and half years since January 2016 would be $1.388 billion.

102. If only a small fraction of these sales were attributed to PSoC, they would easily have met the bonus trigger sales levels in sections 2(c)(ii) ([redacted]) and 2(c)(iii) ("[redacted]") of Pearson Education's contract with Dr. Codding.

103. *Second,* Pearson Education has represented that it receives 20 to 33 percent of state adoption funds. There are roughly 6.2 million students in California schools alone. California allocates the equivalent of one new textbook for every student in an adoption cycle in a core subject matter. The average price of a textbook is $70. There would be approximately $420 million allocated for the 6.2 million students receiving an ELA textbook. This does not include replacement materials that are purchased every year. If Pearson Education received only its lower-end prediction of 20% in ELA textbook sales, it would have generated some $84 million in PSoC sales, not including replacement or professional support materials – an amount that would have led to Dr. Codding receiving the first tranche of her bonus ("**redacted**."). Because no other Pearson Education product has been adopted in California for ELA, the proceeds would necessarily have been generated by PSoC sales.

104. *Third,* this is for only one state, California, in one content area, ELA. Had Pearson Education devoted any meaningful effort to selling PSoC math and ELA courses in other states, it easily would have achieved PSoC sales levels entitling Dr. Codding to her bonus.

105. *Fourth,* a science company, Accelerate Learning-AI, has one science product, StemScopes, for grades K-12. It began selling its products in 2015. From then until now, it has had revenue in excess of $135 million. StemScopes has 13 courses. PSoC has 28. Although the PSoC math and ELA courses have been adopted (and therefore approved for sale) in California (the largest market in the country), the state is in process of adopting a science curriculum only this year. Yet Accelerate Learning-AI has managed to sell a set of courses in other states at sales levels that would meet and exceed Dr. Codding's bonus levels.

106. The US K-12 curriculum market is about $3 billion a year on core products. ELA makes up 48%, math 28%, science 8% and humanities 8%. So one product, StemScopes, with only 8% of the core curriculum market revenue has had more sales revenue than the amount Pearson Education would have to have sold for Dr. Codding to receive her bonus.

107. *Fifth,* a former Pearson Education senior sales executive is prepared to testify that, had Pearson Education devoted reasonable best efforts to selling PSoC, rather than its other, inferior courses, Pearson Education would have met and exceeded the bonus target levels.

108. Dr. Codding has not been able to learn from public or other sources what comparable sales levels Pearson Education has generated from other specific Pearson Education math and ELA courses that Pearson Education has favored over PSoC. She expects that discovery will confirm the publicly reported numbers set out above.

> 109. The evidence is therefore overwhelming that, had Pearson Education used its best reasonable efforts after July 15, 2016 to sell PSoC, rather than abandoning it and selling other course products, it would have achieved PSoC sales levels sufficient to meet Dr. Codding's entitlement to her contractually promised bonus.

See also Second Amended Complaint ¶¶ 114-118. These are in no way "conclusory" allegations, but ones drawn from publicly available hard data and simple math.

### *Pearson Education Has Embedded PSoC in Its Other Core Products.*

As alleged in ¶¶ 119-130, Pearson Education has used both the content and pedagogical design from PSoC and embedded them in its other core course products, including *enVisionMath* and *myPerspectives*. As the Second Amended Complaint alleges:

> 129. If, as Dr. Codding believes, more than 20% of the enVisionMATH program is comprised of PSoC material, this would reflect sales of the incorporated PSoC of $400 million in one year alone. That would easily meet the first tranche of [**redacted**] in sales, entitling her to "[**redacted**]." It would also easily meet the second tranche – "[**redacted**]" – i.e., [**redacted**].

> 130. This does not include any of the sales of other Pearson Education products such as its profitable MyPerspectives program in grades 6–12 ELA that contain PSoC material.

### *Dr. Codding Is Entitled to her Bonus.*

As set forth above, the Second Amended Complaint alleges, chapter and verse, that Pearson Education has breached its contractual duty to use its good faith best efforts to sell PSoC course offerings. It further alleges, as set out in ¶¶ 147 and 149 that,

> 147. Taking into account all of Pearson Education's failings and omissions detailed above, Pearson Education has failed to meet its duty of good faith and fair dealing to Dr. Codding to use its reasonable best efforts to sell PSoC, and proximately caused Pearson Education not to achieve the sales levels for PSoC that it contractually bound itself to try to achieve after July 15, 2016 so that Dr. Codding would receive her bonuses.

> 149. The total reported revenue for 2018 for PSoC sales is $30,000. At this point in the parties' contractual relationship, with less than a year and half to go until the end of 2019 when Pearson Education's obligations to use its best or reasonable efforts to sell PSoC will terminate, it is simply impossible for Pearson Education to ramp up a viable sales effort to sell PSoC in sufficient quantities to meet the sales levels for Dr. Codding to receive a bonus – particularly given that (a) Pearson Education has abandoned all efforts to have PSoC adopted in any of the 15 other adoption states, including Texas, (b) there is not enough time between now and the end of 2019 to have PSoC be adopted to make it eligible for sales in those states, and (c) Pearson Education has not even submitted PSoC in response to numerous RFPs for course materials.

### *The Second Amended Complaint More than Satisfies Rule 12(b)(6).*

Dr. Codding has therefore alleged breach of contract and resulting damages. Pearson Education's efforts have been far from reasonable, and certainly nowhere approaching best ones, proximately resulting in damage to Dr. Codding. See *DSPT Int'l, Inc. v. Nahum,* 624 F.3d 1213, 1223 (9th Cir. 2010) (citation omitted):

> "Proof of a decline in sales combined with evidence tending to discount the importance of other market factors, such as the evidence of positive business conditions and the success of similar businesses not subject to the defendant's tortious conduct, can be sufficient to establish a causal connection between the plaintiff's decline in sales and the misconduct of the defendant."

Dr. Codding has adduced ample factual content that allows the Court "to draw the reasonable inference" that Pearson Education is liable for breach of contract (and anticipatory breach). *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 852 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018) (citations omitted). Pearson Education's motion is larded with unsupported, manifestly fact-bound arguments – including no less than seven quibbling "even if"s and 29 makeweight "conclusory"s – that have no place in a Rule 12(b)(6) calculus. Reciting shibboleths does not give them substance. *Cf.* Lewis Carroll, The Hunting of the Snark, Fit 1, The Landing ("What I tell you three times is true").

### *The Second Amended Complaint Alleges Anticipatory Breach by Pearson Education.*

As the Second Amended Complaint alleges in ¶¶ 149 (quoted above at 7:21) and 154-163, by failing to take any meaningful steps to promote and sell PSoC, by disincentivizing its sales force not to sell PSoC, by not promoting PSoC at educational conferences, by abandoning PSoC as a viable product, and by promoting its other products to the detriment of PSoC sales, Pearson Education has (a) absolutely and unequivocally refused to fulfill its contractual duty to use its best and reasonable efforts to sell PSoC in breach of the Employment Agreement and Agreement and Release and (b) put it out of its power to perform by the end of 2019, making performance of its promise impossible. See *Stonebrae, L.P. v. Toll Bros.,* No. C-08-0221 EMC, 2010 WL 1460208, at *5 (N.D. Cal. Apr. 8, 2010) ) ("if it were clear by the close that escrow that Stonebrae had decided to build no clubhouse or only a clubhouse of sub-par caliber (*e.g.,* a shack), then arguably

1  Toll could possibly claim an anticipatory breach"). To use the Court's analogy, Pearson Education
2  has not tried to build even a lean-to and has run out of time to do so.
3      Dr. Codding may therefore recover damages now for breach of contract without
4  performing or offering to perform any conditions precedent (of which there are none on her part).
5  *Cty. of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262, 1275–76 (1999).
6      As a matter of (a) the terms of the contract, (b) contract law and (c) undisputed fact, Dr.
7  Codding had already fully performed her obligations as of July 15, 2016. *Id.*; 1 Witkin Summary
8  of California Law § 862 (10th ed.2005) (a party suing for anticipatory breach "cannot recover
9  damages without presenting evidence sufficient to establish that, but for the breach, he or she was
10 ready, willing, and able to perform as required by the contract"); *Ersa Grae Corp. v. Fluor Corp.*,
11 1 Cal. App. 4th 613, 625 (1991) ("Professor Williston agrees: 'Where [one party] repudiates, there
12 is no necessity for [the other party] to allege a tender, nor his readiness and willingness to perform.
13 He must, of course, prove that he would have been able to [perform], for otherwise he will fail in
14 his proof of damages ...' (5 Williston on Contracts (1961) § 669, p. 353; emphasis added).").
15     Dr. Codding is therefore entitled to treat Pearson Education's acts and omissions as a final
16 repudiation and assertion that it is no longer bound by the contract, and as a wrongful renunciation
17 of the contractual relation into which it has entered. Dr. Codding's claim becomes one for breach
18 of contract, excusing performance on her part and giving her an immediate right to recover. *Daum
19 v. Superior Court, Sutter Cty.*, 228 Cal. App. 2d 283, 288 (1964).
20     Pearson Education cannot have it both ways. It is either in breach, now, or it has
21 anticipatorily breached, now. Regardless, Dr. Codding is entitled to recover, now. *Id.*; *Stonebrae,
22 L.P.,* cited above.
23     Pearson Education again raises an argument [at 27:20], not raised in its motion to dismiss
24 the initial Complaint, that the anticipatory breach claim is "duplicative" of the breach of contract
25 claim and should be dismissed on this ground.
26     *First,* the Court's Order addressing the (first) Amended Complaint did not acknowledge
27 this as a valid argument, presumably rejecting it, and making this rejection the law of the case.
28

Opposition to Motion to Dismiss Second      9      Case No. 3:18-cv-00817-LB
Amended Complaint

*Swenson v. Siskiyou Cty.,* No. 2:08-CV-1675 KJM CMK, 2014 WL 6390656, at *7 (E.D. Cal. Nov. 17, 2014).

*Second*, it is barred by Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

*Third,* the anticipatory breach claim is not "duplicative" of the breach of contract claim. Otherwise there would be no separate cause of action. And Fed. R. Civ. P. 8(d)(2)-(3) authorizes alternative claims for relief. See *Asha Sports, Inc. v. Club Deportivo Guadalajara, S.A.,* No. 3:03-cv-03350-MEJ, ECF Doc. 23 at 6:23-24, 7:7-9 (N.D. Cal., Feb. 17, 2014 ("While it is true that Plaintiff cannot prevail on both counts [*i.e.,* breach and anticipatory breach of contract], it is too early in this stage of the litigation to determine when any alleged breach occurred, it at all." . . . "The issue is not whether Plaintiff will ultimately prevail on both causes of action, but whether it is entitled to offer evidence to support the claims" (citation omitted).); *Int'l Medcom, Inc v. S.E. Int'l, Inc*, No. C 13-05193 LB, 2014 WL 262125, at *7 (N.D. Cal. Jan. 23, 2014) ("Federal Rule of Civil Procedure 8(d)(3) provides that '[a] party may state as many separate claims or defenses as it has, regardless of consistency.'").

*Fourth,* Pearson Education cites no California or even an apt California federal court decision to support its argument. The footnote language it cites [at 16:18-19] from *Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.,* 801 F. Supp. 2d 1023, 1038 n.16 (S.D. Cal. 2011), is conclusory *dicta*.

### *Conclusion*

The Court should deny the motion to dismiss. If it does not do so, it should grant further leave to amend. Fed. R. Civ. P. 15(a)(2); *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (*en banc*).

Dated: September 4, 2018   KIEVE LAW OFFICES

By *[signature: Loren Kieve]*

Loren Kieve (Bar No. 56280)

Counsel for plaintiff Judy Codding

Opposition to Motion to Dismiss Second Amended Complaint     10     Case No. 3:18-cv-00817-LB