UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JUDY CODDING, | Case No. 18-cv-00817-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| PEARSON EDUCATION, INC., | |
| Defendant. | Re: ECF No. 53 |

## INTRODUCTION

This is a breach-of-contract case regarding bonus payments under an employment agreement.

In 2010, plaintiff Judy Codding, an education professional, entered into an employment agreement (later amended by two other agreements) (collectively, the "Agreements") with Pearson plc, an education and information company that provides curriculum assessment and other services to schools, school districts, states, and students. The Agreements provided that Dr. Codding would work for a subsidiary of Pearson plc, defendant Pearson Education, Inc., to develop education-course offerings known as the "Pearson System of Courses" or "PSoC." The Agreements further provided that Dr. Codding would be paid certain monetary bonuses if PSoC sales met or exceeded a certain threshold dollar amount ("Threshold Amount") by the end of 2019. As of today, PSoC sales have not met or exceeded that Threshold Amount.

Dr. Codding alleges that Pearson Education failed to adequately promote and sell PSoC and that, had it done so, PSoC sales would have hit the Threshold Amount and she would be entitled to receive her bonuses. Dr. Codding brings claims for (1) breach of contract, arguing that Pearson Education breached the implied covenant of good faith and fair dealing that attaches to the Agreements by not adequately promoting and selling PSoC, and (2) anticipatory breach of contract, arguing that Pearson Education breached by refusing to fulfill its contractual duties and making performance impossible.

The court previously dismissed Dr. Codding's original complaint and amended complaint ("AC"). The court dismissed the original complaint because (among other things) Dr. Codding did not support her conclusion — that Pearson Education, had it adequately promoted and sold PSoC, would have made enough in PSoC sales to earn Dr. Codding her bonus — with sufficient factual allegations. *Codding v. Pearson Educ., Inc.*, No. 18-cv-00817-LB, 2018 WL 2298598 (N.D. Cal. May 21, 2018) (*Codding I*).[1] The court dismissed the AC because (among other things) Dr. Codding grouped defendant Pearson Education with non-party Pearson plc, and her grouped allegations against Pearson plc did not sufficiently plead a claim against Pearson Education. *Codding v. Pearson Educ., Inc.*, No. 18-cv-00817-LB, 2018 WL 3609027 (N.D. Cal. July 27, 2018) (*Codding II*).[2] Dr. Codding has now filed a second amended complaint ("SAC") in which she includes additional factual allegations regarding potential PSoC sales and makes allegations against Pearson Education without grouping it with Pearson plc.

Pearson Education moves again to dismiss. The court can address the motion without a new hearing. N.D. Cal. Civ. L.R. 7-1(b).[3] The court denies Pearson Education's motion to dismiss Dr. Codding's breach-of-contract claim but grants its motion to dismiss Dr. Codding's anticipatory-breach claim.

---

[1] Order – ECF No. 30. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Order – ECF No. 47.

[3] The court previously held a hearing on July 19, 2018, for Pearson Education's motion to dismiss the AC.

**STATEMENT[4]**

**1. The Parties**

Dr. Codding is an education professional who, among other things, was the award-winning principal of Pasadena High School in Los Angeles County, was a charter principal of the Coalition of Essential Schools (a national high-school reform effort), was an education consultant to the Ministry of Education in the People's Republic of China and the U.S. Department of Defense Schools, and was a commissioner on the California Commission for the Establishment of Academic Content and Performance Standards.[5]

Dr. Codding served as Chief Operating Officer and Vice President of the National Center on Education and the Economy ("NCEE"), a nonprofit policy and school reform company.[6] In 1998, in her capacity as COO and Vice President of NCEE, Dr. Codding co-founded America's Choice, Inc., as a nonprofit subsidiary of NCEE (that later became a for-profit entity) and served as its Chief Executive Officer and President.[7] NCEE launched America's Choice to implement a school-improvement model that featured standards-based instructional materials, coaching and professional development for teachers, and catch-up programs for struggling students.[8] America's Choice worked with 2,000 schools in 38 states, including California.[9] America's Choice personnel were involved in writing the new Common Core State Standards in English language arts and math that have been adopted by 42 states, including California, and the District of Columbia, Puerto Rico, and other U.S. territories.[10]

---

[4] Unless otherwise noted, the facts recited in the Statement are allegations from the SAC.

[5] SAC – ECF No. 50 at 3 (¶¶ 9–10).

[6] *Id.* at 2 (¶ 6).

[7] *Id.* (¶ 7).

[8] *Id.* (¶ 8).

[9] *Id.*

[10] *Id.*

Defendant Pearson Education is a wholly owned subsidiary of non-party Pearson plc, a British education and publishing company.[11] Pearson plc provides curriculum assessment and other services to schools, school districts, states, and directly to students.[12] In 2010, Pearson plc acquired America's Choice for $80 million.[13]

### 2. The Employment Agreement

In December 2010, following Pearson plc's acquisition of America's Choice, Pearson plc and Dr. Codding entered into a letter Employment Agreement, whereby Pearson plc hired Dr. Codding to be Pearson Education's Managing Director for the Pearson System of Courses.[14] In December 2012, Pearson plc and Dr. Codding slightly amended the Employment Agreement by a written exchange of emails ("Email Amendment").[15] Marjorie Scardino, Pearson plc's then-CEO, signed the Employment Agreement on behalf of Pearson plc.[16]

Dr. Codding alleges that while the Employment Agreement was signed by Pearson plc, she was employed by Pearson Education and PSoC was to be a product of Pearson Education.[17] Dr. Codding's salary was paid by Pearson Education.[18] Her W-2 forms were prepared by Pearson Education.[19] Her initial stock bonus was in the form of Pearson plc American Depository Receipts, but all her other bonuses were paid by Pearson Education.[20] Her health and medical insurance benefits were paid for and administered by Pearson Education.[21]

---

[11] *Id.* at 3 (¶ 11).

[12] *Id.*

[13] *Id.* at 3–4 (¶ 12).

[14] *Id.* at 5 (¶ 13); Employment Agreement – ECF No. 50 at 37–39.

[15] SAC – ECF No. 50 at 5 (¶ 20); Email Amendment – ECF No. 50 at 40.

[16] SAC – ECF No. 50 at 5 (¶ 13); Employment Agreement – ECF No. 50 at 39. Ms. Scardino also wrote and sent Dr. Codding the Email Amendment. Email Amendment – ECF No. 50 at 40.

[17] SAC – ECF No. 50 at 5 (¶¶ 13–14).

[18] *Id.* (¶ 16).

[19] *Id.* (¶ 17).

[20] *Id.* (¶ 18).

[21] *Id.* (¶ 19).

The Employment Agreement assigned Dr. Codding responsibility for overseeing two separate programs.[22] The first program was described in the Employment Agreement as follows: "It involves [Dr. Codding] applying [her] knowledge and support in integrating and helping [Pearson plc] learn to operate [America's Choice], and [her] helping to sign up several customers, such as LA Unified School District and others."[23] The second program was described in the Employment Agreement as follows: "For comprehensive K–10/12 mathematics and literacy courses designed to apply the philosophy of the Common Core State Standards: These courses will cover approximately 150 days of instruction, use multi-media delivery platforms, and have the distinction of being a system of learning through the grades, of engaging students and of being easy for teachers to use."[24] Pearson Education paid Dr. Codding a salary and employment benefits for her services.[25]

Under the Employment Agreement, Dr. Codding was entitled to bonus amounts "based on the amount of sales Pearson Education made of the products for which for which Dr. Codding was responsible as Managing Director, referred to as the 'Pearson System of Courses' or 'PSoC.'"[26] Paragraphs 2(b) and 2(c) of the Employment Agreement (as amended) set out Dr. Codding's bonuses.[27] Dr. Codding acknowledges that Pearson Education paid her the bonuses set out in paragraphs 2(b) and 2(c)(i), and hence this action relates solely to the bonuses set out in paragraphs 2(c)(ii) and 2(c)(iii).[28]

---

[22] *Id.* at 6 (¶ 21).

[23] *Id.* (¶ 22).

[24] *Id.* (¶ 23).

[25] *Id.* (¶ 24).

[26] *Id.* (¶ 25).

[27] *Id.* at 7 (¶¶ 30–31); Employment Agreement ¶ 2(b), 2(c) – ECF No. 50 at 38–39; *see also* Email Amendment – ECF No. 50 at 40 (amending paragraph 2(c)(ii)).

[28] SAC – ECF No. 50 at 8 (¶ 32).

Paragraph 2(c)(ii) provides that once PSoC sales exceed a certain specified Threshold Amount, Dr. Codding would receive a set bonus amount.[29] Paragraph 2(c)(iii) provides that Dr. Codding would additionally receive a percentage royalty as an additional bonus for all PSoC sales over the Threshold Amount, up to a specified ceiling.[30]

### 3. The Release Agreement

On July 15, 2016, Dr. Codding and Pearson Education entered into a Release Agreement.[31]

The Release Agreement's first paragraph states that it "set[s] forth the agreement between [Dr. Codding] and Pearson Education, Inc. and its affiliates (collectively, the 'Company') regarding [Dr. Codding's] separation from the Company."[32] It then states, "[a]s an initial matter, we acknowledge that you and Pearson are parties to an employment agreement dated December 16, 2010, as amended on December 21, 2012 (the 'Employment Agreement')."[33] It recites that it "contemplates the survival of certain terms under the Employment Agreement, and [] amend[s] certain terms of the Employment Agreement, as . . . described . . . below."[34] Among other things, the Release Agreement covers three areas relevant to this dispute:

1. First, "[t]he parties acknowledged that [Dr. Codding's] work under the Employment Agreement is finished, and [her] employment with the Company terminated on October 16, 2015 ('Separation Date')."[35]

2. Second, "the parties agree[d] on [certain] amendments and clarifications of the terms and conditions of [the] Employment Agreement."[36] Among other things, the Release

---

[29] *Id.* at 7 (¶ 31); Employment Agreement ¶ 2(c)(ii) – ECF No. 50 at 38; Email Amendment – ECF No. 50 at 40.

[30] SAC – ECF No. 50 at 7 (¶ 31); Employment Agreement ¶ 2(c)(iii) – ECF No. 50 at 39.

[31] SAC – ECF No. 50 at 6 (¶ 27); Release Agreement – ECF No. 50 at 42–52.

[32] Release Agreement – ECF No. 50 at 42.

[33] *Id.*

[34] SAC – ECF No. 50 at 7 (¶ 28); Release Agreement – ECF No. 50 at 42.

[35] Release Agreement – ECF No. 50 at 42 (¶ 1).

[36] *Id.* at 43 (¶ 2).

Agreement extended the time period that PSoC sales would count for the purposes of calculating Dr. Codding's bonus through to the end of 2019.[37]

3. Third, the parties stated that "[t]he consideration [Dr. Codding] receive[d] under this Agreement and Release is in complete discharge, release, and satisfaction of all obligations and liabilities [other than certain exceptions not relevant here] of Pearson Education, Inc. and its affiliates, including but not limited to Pearson, Inc., Pearson plc, Pearson Education Holdings, Inc., Pearson Education and Assessment, Inc., The Pearson Charitable Foundation, NCS Pearson, Inc., and all of their respective officers, directors, employees, bonus and/or compensation plans (collectively, the 'Release Parties') with regard to any matter or event whatsoever that occurred or happened up to the date of this Agreement and Release, including but not limited to matters regarding [her] employment with the Company and its termination."[38]

## 4. Pearson Education's Efforts to Sell the Pearson System of Courses

### 4.1 Selling PSoC

Dr. Codding alleges that "[t]he United States K–12 comprehensive-curriculum market spends some $3 billion each year" and the K–12 English language arts ("ELA") and math curriculum market spends approximately $2 billion each year.[39] California alone spends approximately $520 million per year on curriculum materials, with 75% of this going to math and ELA.[40]

California and New Mexico adopted the PSoC ELA and math curricula, which were on both states' approved lists.[41] Once adopted, curricula remain on the adoption list for a typical five- to

---

[37] SAC – ECF No. 50 at 9 (¶ 33); Release Agreement – ECF No. 50 at 45 (¶ 2.c).

[38] Release Agreement – ECF No. 50 at 46 (¶ 7.a).

[39] SAC – ECF No. 50 at 14 (¶ 51).

[40] *Id.*

[41] *Id.* at 13 (¶ 44). California has adopted PSoC only for grades K–8 because it does not have an adoption process for high schools. *Id.* at 14 (¶ 52).

seven-year adoption cycle and are eligible to be sold in every school district in the state.[42] Dr. Codding alleges that Pearson Education has done virtually nothing to sell PSoC in California or New Mexico.[43] Dr. Codding claims that Pearson Education has falsely stated that it does not have an ELA product approved in California and that this is the reason for its lower textbook revenue over the past several years.[44] In fact, Pearson plc does have an approved ELA product — PSoC, the only Pearson plc ELA product that was adopted in California in the current adoption cycle — and could have sold PSoC in California beginning in August 2016.[45]

Dr. Codding alleges that Pearson Education has abandoned any meaningful efforts to sell the PSoC math and ELA programs and has pushed its other proprietary Pearson programs instead.[46] Pearson plc's 2016 and 2017 annual reports (which include financial information for Pearson Education) state that Pearson Education's North American sales operations made a "decision not to compete for the California Grades K–8 English Language Arts (ELA) adoption with a core basal programme."[47] This was despite the fact that Pearson Education applied for PSoC to be "adopted" in California and that PSoC was in fact adopted there.[48] Additionally, after July 15, 2016 and through to the present, Pearson Education has done nothing to have the PSoC math and ELA curriculum adopted in any of the other 15 "adoption states," which (along with California and New Mexico) represent approximately 48% of "the total market."[49] Because Pearson Education has not done anything to have the PSoC math and ELA curriculum adopted in other states, it is virtually guaranteed that schools or school districts in those states will not buy PSoC products.[50] For example, Texas is a major market for school textbooks.[51] It is currently going

---

[42] *Id.* at 13 (¶ 44).

[43] *Id.* at 14 (¶ 47).

[44] *Id.* at 13 (¶ 45).

[45] *Id.* (¶¶ 45–46).

[46] *Id.* at 18 (¶ 82).

[47] *Id.* at 18–20 (¶¶ 83–84, 88).

[48] *Id.* at 18–19 (¶ 84).

[49] *Id.* at 14 (¶ 48).

[50] *Id.* (¶ 50).

through an adoption process for textbooks.[52] Pearson Education has not done anything to have Texas adopt PSoC.[53]

Dr. Codding alleges that Pearson Education maintains a nominal website for PSoC but that the website is "moribund" and has not been updated since 2015.[54] The opening webpage for Pearson Education's current website for its "Math Curriculums and Textbooks" does not show PSoC at all (unless the viewer clicks on a "show more" button, after which PSoC appears at the very bottom of Pearson Education's list).[55] Additionally, since this lawsuit began, Pearson Education has deleted pages on its website that referenced Dr. Codding and the value of PSoC's math and ELA curricula.[56]

## 4.2  Sales Force Incentives

Dr. Codding alleges that after July 15, 2016 and through the present, Pearson Education has incentivized its sales force to sell other Pearson Education products and disincentivized its sales force from selling PSoC.[57]

Dr. Codding alleges that Pearson Education has not included PSoC within its core products.[58] Pearson Education's sales team leaders in general have instructed their sales force not to present or sell PSoC and instead to sell Pearson's other products that count toward their sales quotas.[59] Pearson Education sales personnel receive incentives to sell Pearson products.[60] After July 15, 2016 and through the present, Pearson Education has never counted PSoC toward sales quotas.[61]

---

[51] *Id.* (¶ 49).

[52] *Id.*

[53] *Id.*

[54] *Id.* at 23 (¶ 111).

[55] *Id.* at 23–24 (¶¶ 112–13).

[56] *Id.* at 30–31 (¶¶ 142–44).

[57] *Id.* at 15 (¶ 57).

[58] *Id.* at 17 (¶ 79).

[59] *Id.* (¶ 80).

[60] *Id.* at 14 (¶ 58).

[61] *Id.* (¶ 59).

Pearson Education sales personnel can sell PSoC outside of their quotas but receive only a 4% commission instead of the (unspecified) larger commission awarded for other Pearson Education products, creating a disincentive for them to sell PSoC products.[62] Pearson Education's sales personnel have received no credit for selling PSoC in connection with their evaluations and consideration for promotion within the company.[63]

After the adoption of the PSoC ELA courses in California, Pearson Education did no marketing or sales for the 2016–2017 or 2017–2018 school years.[64] Since July 15, 2016, Pearson Education has sold less than $2 million of PSoC nationwide, none of which were the result of any affirmative sales activity by Pearson Education.[65] Since July 15, 2016, Pearson Education has responded to hundreds of requests for proposals ("RFPs") for course materials but has included PSoC in fewer than five responses to these RFPs.[66]

### 4.3   Showing PSoC at National Education Conferences

Every year, including years after July 15, 2016, all of the national education associations have national conferences.[67] Many also have regional and state conferences.[68] Thousands of people attend each of these conferences, and Dr. Codding alleges that these conferences are one of the best ways to reach educators.[69] All of the major education suppliers, including Pearson Education, participate and have booths to showcase their products and services.[70] The publishers include all their textbooks and instructional materials and often invite the authors to be there to talk with

---

[62] *Id.*

[63] *Id.* (¶ 60).

[64] *Id.* (¶ 61).

[65] *Id.*

[66] *Id.* at 18 (¶ 81).

[67] *Id.* at 16 (¶ 64).

[68] *Id.*

[69] *Id.* (¶ 65).

[70] *Id.* (¶ 66).

customers.[71] The publishers frequently make sure their authors are on panels and make presentations at these conferences.[72]

Before joining Pearson Education, Dr. Codding attended many of these conferences, keynoted several of them, and spoke at many of them.[73] After joining Pearson Education, Dr. Codding and her team offered on numerous occasions to attend these conferences and present on PSoC.[74] Pearson Education never invited or asked any of them to attend any of the conferences, including never inviting or asking them to attend any conference after July 15, 2016.[75] Dr. Codding identifies nine organizations that would have been the most important to which to show and demonstrate PSoC.[76] After July 15, 2016 and through to the present, Pearson Education has rarely if ever presented or showcased PSoC at any of these conferences.[77]

### 4.4 Meeting the Threshold Amount

Dr. Codding alleges that if Pearson plc had devoted the same efforts after July 15, 2016 toward selling PSoC that it had devoted to its other course products, PSoC sales would have reached the Threshold Amounts necessary for her bonuses to be awarded to her.[78] Dr. Codding advances six separate bases for her conclusion.

First, Pearson plc's 2017 annual report (which included reporting on Pearson Education's North American operations) reflects that Pearson Education sold £418 million in school courseware in North America during 2016 and £394 million in school courseware in North

---

[71] *Id.* (¶ 67).

[72] *Id.* (¶ 68).

[73] *Id.* (¶ 70).

[74] *Id.* (¶ 71).

[75] *Id.* (¶ 72).

[76] *Id.* at 16–17 (¶ 73) (listing the National Council of Teachers of English, the National Council of Teachers of Mathematics, the Association of Supervision and Curriculum Development, the National Education Association, the American Federation of Teachers, the National Title I Association, the School Superintendents Association, the Council of Great City Schools, and the International Society for Technology in Education).

[77] *Id.* at 17 (¶ 74).

[78] *Id.* at 21 (¶ 96).

America during 2017, which equate to approximately $560 million and $528 million, respectively.[79] If a fraction of those sales were attributed to PSoC, those sales would have met the Threshold Amount necessary to trigger Dr. Codding's bonus payments.[80]

Second, Pearson Education has represented that it receives 20% to 33% of state adoption funds.[81] There are roughly 6.2 million students in California.[82] California allocates the equivalent of one new textbook for every student in an adoption cycle in a core subject matter.[83] The average price of a textbook is $70, which means there is approximately $420 million allocated for the 6.2 million students receiving an ELA textbook (not including replacement materials that are purchased every year).[84] The only Pearson Education product adopted in California for ELA is PSoC, so any ELA sales in California would necessarily have been generated by PSoC sales.[85] If Pearson Education received its lower-end prediction of 20% of ELA textbook sales, it would have generated $84 million in PSoC sales, which is more than the Threshold Amount necessary to trigger Dr. Codding's bonus payments.[86]

Third, the $84 million figure is only for sales in one state, California, in one content area, ELA. Dr. Codding alleges that had Pearson Education devoted any meaningful effort to selling PSoC math or ELA courses in other states, it would have achieved PSoC sales that met the Threshold Amount necessary to trigger Dr. Codding's bonus payments.[87]

Fourth, Dr. Codding draws a comparison to another education-course company and its sales. An unrelated science company, Accelerate Learning-AI, has one science-education product,

---

[79] *Id.* (¶¶ 98–99).

[80] *Id.* at 22 (¶ 102).

[81] *Id.* (¶ 103).

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Id.* (¶ 104).

StemScopes, for grades K–12.[88] Accelerate Learning began selling products in 2015 and has had revenue in excess of $135 million between then and now (a figure greater than the Threshold Amount).[89] The K–12 curriculum market in the United States is about $3 billion a year on core products: of those, ELA makes up 48%, math 28%, science 8%, and humanities 8%.[90] With one product (StemScopes) in a subject area that has only 8% of the core-curriculum-market revenue (science), Accelerate Learning has made more in sales than the Threshold Amount necessary for Dr. Codding to receive her bonus. Additionally, Accelerate Learning has not sold courses in California — the largest market in the country — because California had not adopted a science curriculum before this year.[91] Dr. Codding implies that PSoC sales — which would have been in subject areas that have a greater share of the core-curriculum-market revenue (ELA and math) and would have included a larger market (California) — likewise would have exceeded the Threshold Amount necessary for trigger her bonus.[92]

Fifth, Dr. Codding alleges that a former Pearson Education senior sales executive is prepared to testify that had Pearson Education devoted reasonable best efforts to selling PSoC, rather than its other courses, PSoC sales would have exceeded the Threshold Amount necessary to trigger Dr. Codding's bonus payments.[93]

Sixth, the Agreements provide that if (1) PSoC material is combined with and sold as part of other Pearson Education products of services and (2) the PSoC material makes up at least a certain set percentage ("Combination Percentage") of the total Pearson Education products or services with which PSoC is sold, sales of that PSoC material will count towards Dr. Codding's bonus targets.[94] Dr. Codding alleges that Pearson Education has used key elements of both the content

---

[88] Id. (¶ 105).

[89] Id.

[90] Id. at 23 (¶ 106). The SAC does not specify what makes up the remaining 8%.

[91] Id. at 22 (¶ 105).

[92] See id. at 23 (¶ 106).

[93] Id. (¶ 107).

[94] Id. at 9 (¶ 33); Release Agreement – ECF No. 50 at 44 (¶ 2.b).

and pedagogical design from PSoC and has embedded them in its other core course products, including its *myPerspectives* ELA program for grades 6–12 and its *enVisionMATH* Common Core for grades K–8.[95] Dr. Codding alleges that PSoC material makes up considerably more than the Combination Percentage threshold of those two courses.[96] Pearson Education has stated that the potential revenue stream for *enVisionMATH* is over $2 billion a year.[97] Multiplying those potential *enVisionMATH* sales by the Combination Percentage results in sales attributable to PSoC that would exceed the Threshold Amount necessary to trigger Dr. Codding's bonus payments — even without including sales from other Pearson Education programs that also contain PSoC material, such as the *MyPerspectives* program.[98]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[95] SAC – ECF No. 50 at 25 (¶ 119).

[96] *Id.* at 28 (¶ 126).

[97] *Id.* at 24 (¶ 116).

[98] *Id.* at 28 (¶¶ 129–30).

the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

## ANALYSIS

### 1. Breach of Contract

Dr. Codding does not allege that Pearson Education breached an express term of the Agreements. Instead, she alleges that Pearson Education breached the implied covenant of good faith and fair dealing.[99]

### 1.1 Governing Law

The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995)). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract,[100] (2) the plaintiff did all or substantially all of the things that the contract required her to do or that she was excused from having to do, (3) all conditions required for the defendant's performance had occurred, (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract, and (5) the defendant's conduct harmed the plaintiff. *Qingdao Tang-Buy Int'l Import & Export Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-cv-00624-LB, 2016

---

[99] SAC – ECF No. 50 at 12–13 (¶¶ 38–41), 31–32 (¶¶ 148–53).

[100] Dr. Codding entered into the Employment Agreement with Pearson plc, not Pearson Education. (Dr. Codding entered into the Release Agreement, which modified the Employment Agreement, with Pearson Education.) Pearson Education has not argued that the Employment Agreement is not enforceable against it, *see Codding II*, 2018 WL 3609027, at *7, so the court assumes for the purposes of the motion to dismiss that this element is satisfied.

WL 6524396, at *5 (N.D. Cal. Nov. 3, 2016) (citing Judicial Council of California Civil Jury Instructions § 325 (2011); *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007)). Regarding the last element — that the defendant's conduct harmed the plaintiff — "'[c]ausation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain.'" *Siqueiros v. Fed. Nat'l Mortg. Ass'n*, No. EDCV 13-01789-VAP (DTBx), 2014 WL 3015734, at *5 (C.D. Cal. June 27, 2014) (quoting *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997)). "'The test for causation in a breach of contract action is whether the breach was a substantial factor in causing the damages.'" *Id.* (internal ellipsis omitted) (quoting *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 909 (2005)). "'[M]ere conclusory statements do not suffice' to sufficiently state a breach of contract cause of action." *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 408 (9th Cir. May 2, 2018) (internal ellipsis omitted) (quoting *Iqbal*, 556 U.S. at 678); *accord, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012).

### 1.2   Application

The parties agree that the covenant of good faith and fair dealing requires Pearson Education to use at least some efforts to sell PSoC. They dispute the standard that applies to measuring the adequacy of those efforts. Dr. Codding argues that the covenant of good faith and fair dealing requires Pearson Education to use "best efforts."[101] Pearson Education argues that it is required to use only "reasonable efforts, not best efforts," and that it is not required to take actions against its own self-interest, even if Dr. Codding might be adversely affected.[102] The court does not decide between these standards here, because Dr. Codding has sufficiently pleaded a claim under the lower "reasonable efforts" standard.[103]

---

[101] SAC – ECF No. 50 at 12 (¶ 39); Codding Opp'n – ECF No. 55 at 3.

[102] Pearson Educ. Mot. – ECF No. 53 at 8, 15–16.

[103] Because the parties have raised arguments regarding the "law of the case" doctrine in connection with the good-faith-and-fair-dealing standard, *see* Codding Opp'n – ECF No. 55 at 3, Pearson Educ. Reply – ECF No. 57 at 6–7, the court briefly addresses that doctrine to clarify the issue. "For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication

*(cont'd)*

Dr. Codding alleges that Pearson Education, among other things, (1) made a decision to not sell PSoC to California schools despite the fact that PSoC was approved in California, (2) did not try to have PSoC adopted by other states, (3) disincentivized its sales force from selling PSoC by paying its sales force lower commissions for PSoC sales and not counting PSoC sales towards sales targets, evaluations, or promotions, (4) included PSoC fewer than five times out of hundreds of customer RFPs asking for course materials, and (5) rarely or never showcased PSoC at education conferences. This plausibly pleads that Pearson Education did not exert reasonable efforts to sell PSoC. *Cf. Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912, 926–27 (E.D. Cal. 2010) (holding on a motion for summary judgment that evidence that the defendant cancelled product demonstrations intended to market the plaintiff's products, and focused marketing on only two customers while not allocating any funding to market products to other customers, raised a triable issue as to whether the defendant breached its duty to use commercially reasonable efforts to promote and sell the plaintiff's products).

Dr. Codding has also plausibly alleged causation. As an initial matter, Dr. Codding's allegations about education-course sales generally and Pearson Education specifically plausibly pleads that Pearson Education's purported lack of reasonable efforts caused PSoC sales to be lower than they otherwise would be. *Cf. Citri-Lite*, 721 F. Supp. 2d at 934 (holding on a motion for summary judgment that evidence that conducting product demonstrations can lead to increased product sales and distributions raised a triable issue as to whether the defendant's cancellation of product demos caused diminished sales and, therefore, caused injury to the plaintiff).

As the court previously noted, it is not sufficient for Dr. Codding to plead that Pearson Education's lack of efforts caused PSoC sales to be diminished generally — Dr. Codding must

---

in the previous disposition. A significant corollary to the doctrine is that dicta have no preclusive effect." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (citations omitted). The court has not explicitly or by necessary implication decided between the parties' competing standards, either here or in its prior orders, *see Codding I*, 2018 WL 2298598, at *5, so the law-of-the-case doctrine does not apply. The parties may re-raise their arguments as between "reasonable efforts" and "best efforts" at summary judgment or trial, where the parties and the court will have the benefit of a full factual record.

plead that Pearson Education's lack of efforts proximately caused PSoC sales to fall short of the Threshold Amount. *Codding I*, 2018 WL 2298598, at *5 ("[T]he Agreements do not provide for a straight commission: they set a Threshold Amount to receive bonuses, and if sales do not meet the Threshold Amount, Dr. Codding is not entitled to any bonuses at all (other than the bonuses she has already received). Dr. Codding therefore must allege non-conclusory facts that plead that Pearson Education's breach — limited to conduct after July 15, 2016 — was the proximate cause of PSoC sales falling short of the Threshold Amount."). The court dismissed Dr. Codding's original complaint because she did not support her claims of causation with non-conclusory facts. *Id.* In her SAC, however, Dr. Codding added numerous non-conclusory factual allegations — including specific facts about (1) the potential size of the market for PSoC courses, which is many multiples of the Threshold Amount, (2) other education-course vendors who have sold courses in smaller markets, where there is less funding available, that have nonetheless made sales that exceeded the Threshold Amount, and (3) Pearson Education's sales and sales estimates of other products that it is marketing and selling in lieu of PSoC, and how those levels exceed the Threshold Amount — that support her claim that PSoC's lack of efforts were the proximate cause not just of PSoC sales falling short generally but of their falling short of the Threshold Amount.

Pearson Education makes three general categories of arguments in support of its motion to dismiss. First, Pearson Education argues that Dr. Codding improperly imposes a "best efforts" standard instead of a "reasonable efforts" standard.[104] But Dr. Codding has pleaded a claim under either standard. *Cf. Citri-Lite*, 721 F. Supp. 2d at 926 (applying reasonable-efforts standard). Pearson Education also argues that "reasonable efforts" do not require it to take commercially unreasonable actions or to act against its own self-interest.[105] Even if that standard applies, there is no basis at the pleading stage for presuming that Pearson Education's doing more to market and sell PSoC would be commercially unreasonable or force it to act against its self-interest. *Cf. Eastwood Ins. Servs., Inc. v. Titan Auto Ins. of N.M.*, 469 F. App'x 596, 598–99 (9th Cir. 2012).

---

[104] Pearson Educ. Mot. – ECF No. 53 at 15–16.

[105] *Id.* at 16.

Second, Pearson Education argues that Dr. Codding's allegations that it did not exert efforts to sell PSoC are conclusory.[106] The court disagrees. Dr. Codding pleaded specific facts about the states where Pearson Education allegedly did not market PSoC, the education conferences where Pearson Education allegedly did not present PSoC, and the methods Pearson Education allegedly used that disincentivized its sales force from selling PSoC. Dr. Codding's allegations are sufficiently concrete to withstand a motion to dismiss.

Third, Pearson Education argues that Dr. Codding's analyses about how much in PSoC sales Pearson Education could have achieved with more efforts are conclusory and implausible.[107] It argues that, among other things, many products showcased at education conferences turn out not to be successful and the fact that other educational products might have had sales in excess of the Threshold Amount does not mean that PSoC would have sold just as well. The court disagrees that Dr. Codding's claims are conclusory or implausible as a matter of law. Dr. Codding's analyses are supported by specific factual allegations and at least plausibly suggest that Pearson Education could have made PSoC sales in excess of the Threshold Amount, as it may have achieved with other Pearson courses and as other education-course companies may have achieved with their courses. It may of course turn out after discovery that those other courses and companies are not good comparators and that PSoC would not have sold as well, even with Pearson Education's reasonable or best efforts. But the court cannot make that determination at this juncture under a notice-pleading standard. Dr. Codding has plausibly pleaded a breach-of-contract claim that withstands a motion to dismiss.[108]

---

[106] *Id.* at 17–19.

[107] *Id.* at 19–27.

[108] Pearson Education makes several other arguments that the court cannot consider on a motion to dismiss. To take one example, Pearson Education cites to PSoC sales figures from 2010 to 2015 and argues that these sales figures render it implausible that PSoC sales would have increased in 2016. Pearson Educ. Mot. – ECF No. 53 at 17, 21. The court cannot adopt that conclusion on a motion to dismiss. Markets can change from year to year, *see, e.g.*, SAC – ECF No. 50 at 13 (¶ 44) (discussing how California adopted PSoC's math curriculum in early 2014 and PSoC's ELA curriculum in late 2015), and the court cannot say that PSoC sales figures from 2010 to 2015 render Dr. Codding's allegations about potential PSoC sales in 2016 and beyond implausible. To take another example, Pearson Education acknowledges that it did not compete for California grades K–8 ELA adoption with a core basal program but states that PSoC is not a core basal program, and it claims that it did compete

*(cont'd)*

The court denies Pearson Education's motion to dismiss Dr. Codding's breach-of-contract claim.

## 2. Anticipatory Breach

### 2.1 Governing Law

To plead a claim for anticipatory breach, a plaintiff must plead that "'(1) the other party absolutely and unequivocally refused to perform and (2) [the plaintiff] effectuated the other party's breach by materially changing [her] position and treating the repudiation as final.'" *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, No. C-11-2573 EMC, 2011 WL 6099394, at *8 (N.D. Cal. Dec. 7, 2011) (quoting *Shahani v. United Commercial Bank*, 457 B.R. 775, 783 (N.D. Cal. 2011) (citing *Guerrieri v. Severini*, 51 Cal. 2d 12, 19 (1958); *Wilton v. Clarke*, 27 Cal. App. 2d 1, 4 (1938))).

### 2.2 Application

Dr. Codding's claim for anticipatory breach in her FAC failed for at least two reasons. "First, . . . her anticipatory-breach claim improperly groups Pearson Education with non-party Pearson plc. Second, even setting that issue aside, Dr. Codding does not plead that either Pearson Education or Pearson plc absolutely and unequivocally refused to perform under the Employment Agreement." *Codding II*, 2018 WL 3609027, at *9. Dr. Codding's SAC cures the first problem, but not the second. Dr. Codding does not allege that Pearson Education has absolutely and unequivocally refused to perform.

Dr. Codding claims that Pearson Education has failed to promote and sell PSoC and disincentivized its sales force from selling PSoC.[109] As the court previously explained, "'[a]nticipatory breach must appear only with the clearest terms of repudiation of the obligation of

---

in California by selling PSoC. Pearson Educ. Mot. – ECF No. 53 at 20. This contradicts Dr. Codding's allegations that (regardless of whether PSoC is a core basal program or not) Pearson Education is not selling PSoC in California and has instructed its sales force not to sell PSoC in California. SAC – ECF No. 50 at 14 (¶ 47), 15 (¶ 61), 19 (¶ 87). On a motion to dismiss, the court must assume the truth of these allegations and cannot credit Pearson Education's contrary factual claims.

[109] SAC – ECF No. 50 at 33 (¶ 154).

the contract,'" *Codding I*, 2018 WL 2298598, at *6 (quoting *Martinez v. Scott Specialty Gases, Inc.*, 83 Cal. App. 4th 1236, 1246 (2000)), and these actions do not constitute the "clearest terms of repudiation" required to give rise to an anticipatory-breach claim.

Dr. Codding also claims that Pearson Education "has put it out of its power to perform so as to make substantial performance of its promise impossible," because "it is impossible for Pearson Education to sell PSoC in sufficient quantities to meet the sales levels for Dr. Codding to receive a bonus."[110] She does not support this conclusion with factual allegations. To the contrary, the factual allegations in her SAC discuss how many opportunities and how much in potential sales there are for Pearson Education to sell PSoC and meet the Threshold Amount. She does not cognizably plead that it is impossible for Pearson Education to sell PSoC and meet the Threshold Amount.

As Dr. Codding has not sufficiently pleaded the elements of an anticipatory-breach claim, the court grants Pearson Education's motion to dismiss this claim. As Dr. Codding has had three chances, has had the benefit of two prior court orders on this issue, and has nonetheless failed to cognizably plead this claim, the court holds that further amendment would be futile and dismisses this claim with prejudice.

## CONCLUSION

The court denies Pearson Education's motion to dismiss Dr. Codding's breach-of-contract claim but grants its motion to dismiss Dr. Codding's anticipatory-breach claim. The dismissal of the anticipatory-breach claim is with prejudice.

**IT IS SO ORDERED.**

Dated: September 18, 2018

_____
LAUREL BEELER
United States Magistrate Judge

---

[110] *Id.* (¶¶ 155–56).